## Case No. 4,094.

### In re DRUMMOND.

[4 Biss. 149.][1]

Circuit Court, D. Indiana. Jan., 1868.

PREFERENCE—SURRENDER.

1. No creditor of a bankrupt, who obtains a fraudulent preference from him, can take any benefit thereby.

2. Every creditor receiving a fraudulent preference, who, after adjudication of bankruptcy, and before he is sued on account of such preference, voluntarily surrenders to the assignee all property, money, and advantage received by him under such preference, may prove his debt and have his dividend in like manner as if no preference had been given. But he forfeits all right to prove his claim or have a dividend, if he fails voluntarily to deliver up what he has obtained under such preference, or only delivers it up at the end of a law-suit.

In bankruptcy.

Hendricks, Hord & Hendricks, for Keen & Co.

Rand & Hall, for opposing creditors.

McDONALD, District Judge. On the petition of some of his creditors, this court, several months ago, declared Drummond a bankrupt. The matter was then referred to the proper register, before whom those creditors proved their claims. Afterwards, January 13, 1868, Keen & Co., of Cincinnati,

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

as creditors of Drummond, presented to the register proper proof of a claim of theirs amounting to eleven hundred and sixty-eight dollars and ninety-three cents. This proof was sufficient for the allowance of the claim, if the objection made to it, as hereinafter stated, does not preclude its allowance. On the presentation of this claim, the creditors, on whose petition said adjudication of bankruptcy was obtained, appeared before the register, and, in resistance of the allowance of the claim, filed a written statement of their objections to it.

This statement is substantially as follows: That on the 20th of March, 1867, Drummond, being a bankrupt, and in contemplation of insolvency, for the purpose of giving to Keen & Co., and to certain other creditors, a fraudulent preference, sold to one Trimble and one Read two hundred acres of land at one thousand dollars, and his stock of merchandise at the price of four thousand five hundred and seventy-five dollars, making together the aggregate sum of five thousand five hundred and seventy-five dollars, thereby paying to them a debt of fifteen hundred dollars which he owed them, and taking for the residue of the five thousand five hundred and seventy-five dollars their notes for upwards of two thousand dollars, and causing them to execute to said Keen & Co. a note for upwards of eight hundred dollars, and causing the said land to be conveyed to Keen & Co. and to Howe, Pumfrey & Co. (other creditors of Drummond), and transferring book accounts to the amount of sixteen hundred dollars to the two last-named companies; that all this was done fraudulently to pay and prefer Keen & Co. in regard to the same claim which they are now seeking to have allowed; that Keen & Co. accepted said payment and preference, having reasonable cause to believe that a fraud was, in said transactions, intended by Drummond on the bankrupt act, and that he was insolvent, and owed three thousand dollars not provided for in said transfers; that said transfers were the very grounds on which Drummond was adjudged a bankrupt; and that after Bradshaw was appointed his assignee, Keen & Co., on his demand, delivered over to the assignee all the money, notes, accounts, and other property so received by them by way of payment and preference as aforesaid, admitting that they held them in fraud of the bankrupt act [14 Stat. 517], and that they had received them with a knowledge of the insolvency of Drummond.

Keen & Co. contended before the register that these objections, even if they were all true, did not preclude the allowance of their claim. They also denied that they ever had reasonable cause to believe that Drummond, in making said payments and transfers, intended a fraud on the bankrupt act, or was insolvent. On these points an issue in law, as well as an issue of fact, was made before the register; and he, with the consent of all

parties, certifies these issues to me for trial. The issue in law presents for my decision this question: On the supposition that all the matters set forth in said written statement are true, do they preclude the allowance of the claim in question?

It cannot be doubted that if a fraudulent payment was made, or a fraudulent preference given, by Drummond to Keen & Co., and if the latter received such payment or preference with notice of such fraud on the part of Drummond, their claim cannot be allowed so long as they retain the benefit of such payment or preference. But they contend that, having turned over to the assignee everything which constituted such payment and preference, and put all parties and all assets in statu quo, they are now precisely in the same condition as if they had never received any payment or preference. Whether this is so, must depend on a proper construction of the provisions of the bankrupt act relating to the question. There are but two sections in that act which throw any light on the subject. Section 23 provides that: "Any person who, after the approval of this act, shall have accepted any preference, having reasonable cause to believe that the same was made or given by the debtor contrary to any provision of this act, shall not prove the debt or claim on account of which the preference was made or given, nor shall he receive any dividend therefrom, until he shall first have surrendered to the assignee all property, money, benefit or advantage received by him under such preference." The 39th section, after pointing out the various grounds on which a debtor may be forced into bankruptcy by his creditors, —and among the rest, the transfer of money or property in violation of the bankrupt act, —declares that if any person "shall be adjudged a bankrupt, the assignee may recover back the money or other property so paid, conveyed, assigned, sold, or transferred contrary to this act: provided, the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act was intended, and that the debtor was insolvent; and such creditor shall not be allowed to prove his debt in bankruptcy." At first view, these two provisions of the act seem to be irreconcilable. And if they really are so, then the former must fall and the latter prevail. Such is the rule in regard to repugnancies in a statute. Dwar. St. 660. But this rule is not to be resorted to till all other rules of interpretation fail; for it is the duty of courts, if possible, to give effect to every part of a statute, and to hold no part of it void.

Let us then inquire whether any reasonable construction can be given to the two provisions of the bankrupt act above cited, so as to make them both stand consistently with each other. It is suggested by the creditors who oppose the allowance of the claim of Keen & Co., that the apparent re-

pugnance in question may be reconciled by construing the clause cited from the 23rd section as only applying to cases of voluntary bankruptcy, and the provision copied from the 39th section as relating only to cases of involuntary bankruptcy. This suggestion is, at first blush, plausible; but I think it cannot bear a strict scrutiny. And, for the following reasons, I am disposed to reject it: First. The provision in the 23rd section is too comprehensive to be restricted to cases of voluntary bankruptcy. In terms it applies to "any person" who accepts "any preference," having reasonable cause to believe that the same was made or given by the debtor "contrary to any provisions" of the bankrupt act. This language as plainly and as strongly applies to involuntary as to voluntary bankruptcy; and to confine it to voluntary cases only, would be doing violence to the express words of the section. Secondly. Such a construction would be unfair and unjust as between preferred creditors. The creditor who receives a preference from a debtor, who is afterwards forced into involuntary bankruptcy, is certainly chargeable with no greater wrong than the creditor who receives a like preference from a debtor who subsequently becomes a voluntary bankrupt. In equity and conscience, they occupy the same ground. And if they both repair the wrong, by delivering up to the assignee whatever they received by way of preference, and thus equally put everything in statu quo, it would be most unfair to hold that in the voluntary case the creditor shall have his dividend, and that the creditor in the involuntary case shall be utterly precluded from asserting any claim on the estate of the bankrupt. Such a construction is so glaringly inequitable, that I cannot presume that congress intended it.

Counsel for Keen & Co. suggest that the provision cited from the 39th section is applicable only to such preferred creditors as do not voluntarily deliver up the money or property by which they obtained the preference, but hold to it till it is forced from them by a lawsuit. I am inclined to adopt this interpretation. It does no violence to the language of the provisions in question; and it reasonably reconciles the portions of them which on first view would seem repugnant. Moreover, I think the language cited from the 39th section will fairly bear this construction. That language is that "the assignee may recover back the money or other property so paid, conveyed, assigned, sold, or transferred, contrary to this act, provided the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act was intended, or that the debtor was insolvent; and "such creditor" shall not be allowed to prove his debt in bankruptcy." Now, whom does the phrase "such creditor," in this provision, comprehend? Does it mean all preferred creditors in bad faith? Or does it only refer to such creditors, as in bad faith

have received a preference, and have refused to disgorge it till it was forced from them by a lawsuit? The phrase "such creditors" must refer to some creditors named before in the act. Grammatically, it is in the nature of a relative pronoun; and, like a relative pronoun, it has reference to an antecedent; and the rule in law, as in grammer, is that it generally refers to the last antecedent to which it may fairly apply. Here the last antecedent is obviously the preferred creditor whom the assignee in an action at law has forced to give up the money or property by which such creditor acquired a preference. To this sort of creditor only, I think, does the phrase "such creditor" apply; and surely it does no violence to any words or provisions of the act, so to apply it. On the contrary, I think that such a construction aids the other provisions in question by giving force and effect to them all, and is, at the same time, fairly consistent with all the words of the 39th section. No unfair, unjust, or absurd consequences follow this construction. It leaves the locus poenitentiae to every preferred creditor, whether in a case of voluntary or involuntary bankruptcy. It in effect says to him, "If you will voluntarily surrender the property or money by which you obtained a fraudulent preference, and thereby put all parties interested in statu quo, you may have a fair dividend in the bankrupt's assets; but if you hold on to your unjust preference till it is forced from you by a lawsuit, and thus delay the proceedings in bankruptcy, to the injury of honest creditors, you shall, as a just punishment for your obstinacy and your fraud, be entirely precluded from asserting any claim on the assets of the bankrupt arising out of your fraudulently preferred debt."

I think, therefore, that the following rules are fairly deducible from these two sections of the bankrupt law: 1. Every creditor, who receives a preference by way of payment of his debt, or security for it, having at the time reasonable cause to believe that the debtor is insolvent, or intends by such preference to violate any of the provisions of the bankrupt law, shall take no benefit by such preference. 2. Every creditor, receiving any fraudulent preference, who, after adjudication of bankruptcy, and before he is sued on account of such preference, shall voluntarily surrender to the assignee all property, money, benefit, and advantage received by him under such preference, may prove his debt and have his dividend, in like manner as if no preference had ever been given him. 3. Every creditor receiving any fraudulent preference, and not voluntarily surrendering the property, money, &c., which gave him such preference, or not surrendering the same till he is forced to do so by suit, shall, as a punishment for his fraud and obstinacy, forfeit all right to prove the debt so preferred, or to claim any dividend thereon.

With these views I must decide, as I do, that

on the supposition of the truth of all the matters set out in the written statement filed by the creditors who oppose the allowance of the claim of Keen & Co., they are nevertheless entitled to have their claim allowed, and to have their just dividend thereon. It follows that there is no necessity for me to try the issue of fact certified to me; for, even if that issue were decided against Keen & Co., they would be allowed their claim and dividend. It is ordered that the clerk certify this decision to the register.

NOTE. The surrender of a fraudulent preference must be made before judgment, but it lies in the discretion of the court to allow the creditor to surrender after suit brought and before judgment. In re E. R. Stephens [Case No. 13,365]. See In re Kipp [Id. 7,836]. A voluntary surrender, absolves the creditor from fraud and allows him to prove his debt, but not otherwise. In re Davidson [Id. 3,599]; In re Hunt [Id. 6,882]. A fraudulent conveyance cannot be surrendered so as to allow the creditor to prove his claim. Bingham v. Richmond [Id. 1,415]; Same v. Frost [Id. 1,413]; and Same v. Williams [Id. 1,413]. Paying a judgment recovered against the creditor is no surrender. In re Tonkin [Id. 14,094].