## DICKINSON v. SECURITY BANK OF RICHMOND.

(Circuit Court of Appeals, Fourth Circuit. July 6, 1901.)

### No. 405.

BANKRUPTCY—PROVABLE CLAIMS—SURRENDER OF PREFERENCE.

All that the bankruptcy act requires of a creditor who has received a preference, before he will be entitled to prove his claim against the bankrupt's estate, is to place the parties in statu quo; and where the preference consisted of a note of a third party, which was credited on the debt of the bankrupt, such requirement is complied with by a return of the note, and the trustee cannot refuse to accept such note, and demand payment in cash of the amount for which the creditor took it.

Appeal from the District Court of the United States for the Eastern District of Virginia.

This case comes up on appeal from the district court of the United States for the Eastern district of Virginia, sitting in bankruptcy. The Miller China Company, a corporation of the state of Virginia, conducted business for several years in the city of Richmond in that state. It did its banking business with the Security Bank of Richmond, and at the date

of the transaction hereinafter mentioned was indebted to that bank by note in the sum of $5,000. The bank having learned that W. M. Miller, the president of the china company, and a valuable man, was about to leave it, became uneasy with regard to the debt due the bank. Its officers visited the china company, and examined its books. Upon this examination it was found that W. M. Miller was indebted to the china company in the sum of $742.59, and that its condition was unsatisfactory. Thereupon the bank insisted that the debt of the china company to it be reduced. To this end on 15th January, 1900, when the $5,000 note became due, it was arranged that the bank should use a balance of $800.08, then to the credit of the china company as a depositor in the bank, and a time note for $742.59, given by Miller for his indebtedness to the china company. In arranging the matter, there was added to the $800.08 the present value of this note, its face, less the interest to its maturity, and the remainder was provided for by a demand note of the china company for $3,462.21. This mode of settlement having been determined upon, the book entries were made in the bank, in accordance with the usual banking methods. The china company was credited with this cash deposit, with the present value of the note, and with the demand note, and gave its check for $5,-000, thus closing the transaction. On 20th January next thereafter, the china company made a general assignment for the benefit of its creditors. This being an act of bankruptcy, it was at the instance of certain creditors declared an involuntary bankrupt. The arrangement with the bank having been made within the four months, under the advice of its solicitor, it offered to return all that it had received from the bankrupt, in effect canceling the transaction. To this end it offered to the trustee the note of Miller and the amount of the deposit. The trustee at first refused to receive anything less than the amount of the deposit and the cash value of the note,—in all, $1,538.71 in money. Finally, by agreement of parties, he received in cash the $800.08, amount of the deposit, and agreed that the question should be submitted to the referee whether the bank could return the note or pay in cash the sum of $738.63, at which it was credited in the transaction above spoken of. The referee held that the bank should pay the cash value of the note, $738.59, and further, that this note having matured, and there being no satisfactory evidence that notice of protest had been sent to the china company, who had indorsed it, that the bank had no claim for it against the bankrupt estate. Exceptions were taken to this conclusion of the referee, and the district court, hearing the exceptions, overruled the referee, directing the bank to deliver to the trustee, and instructing the trustee to receive, the note of W. M. Miller. A petition for leave to appeal was granted, and the case comes up on assignment of error.

John A. Lamb, for appellant.

Charles V. Meredith, for appellee.

Before SIMONTON, Circuit Judge, and BRAWLEY and BOYD, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). One of the purposes of the bankrupt act is to obtain an equal division of the assets of the bankrupt among his creditors. To this end it sets its face against preferences. All preferences made within four months of the adjudication of bankruptcy are set aside. If a creditor, during these four months, has received, however innocently, any part of the assets of the bankrupt on account of his debt, he must return it, or be debarred of any interest in the bankrupt's estate. The relations between him and the bankrupt must be restored in statu quo. Bankr. Act 1898, §§ 57–59; In re Fixen, 4 Am. Bankr. R. 10, 42 C. C. A. 354, 102 Fed. 295, 50 L. R. A. 605; Electric Co. v. Worden, 39 C. C. A. 582, 99 Fed. 400; Pirie v. Trust Co. (May

27, 1901) 21 Sup. Ct. 906, 45 L. Ed. 1171. In the present case, the bank, dealing with the china company, within four months of the adjudication, received of its assets $800.08 in cash and the note of W. M. Miller. After the adjudication the bank returned just what it received,—the cash and the note. In re Drummond, 4 Biss. 149, Fed. Cas. No. 4,094. The appellant, however, insists that the bank purchased the note from the china company for its face value less the discount, and that it must now account for this value in cash. But the transaction shows no such purchase. The bank, the creditor, with the view of reducing its claim upon the china company, took part of its assets. In order to ascertain how much of the claim was thus provided for, it was necessary to ascertain the value of these assets. The deposit had its fixed value, $800.08. The time note was valued at its then present value,—that is to say, its face, less the interest until maturity. These were deducted from the $5,000 claim, and the remainder ascertained. The bank did not take the note for discount in the regular course of business, or pay money for it. Nor did it part with the note. When, by the operation of the bankrupt law, the whole transaction was annulled, it returned the note and the cash deposit, and everything was put in statu quo. Even if the transaction were fraudulent, all that the bank could be required to do would be to return the asset or its value. In re Heinsfurter (D. C.) 97 Fed. 198. In this case the bank has returned the asset, and it is admitted that its value is nothing. It is supposed, however, that inasmuch as there is no satisfactory evidence that the note was protested at maturity, or of any evidence of its dishonor given to the china company it is discharged. But no claim is made on the china company as indorsee of this note. Nor is its claim against Miller at all impaired because of want of notice of its dishonor. All that the bank has done has been to return to the china company this part of its assets, exactly as it had received it. We see no error in the decision of the district court, and it is affirmed.