## Case No. 11,803.

### In re RICHTER'S ESTATE.

[1 Dill. 544;[1] 4 N. B. R. 221 (Quarto. 67); 3 Chi. Leg. News, 33; 2 Leg. Gaz. 362.]

Circuit Court, D. Iowa.    Oct. Term, 1870.

BANKRUPTCY — FRAUDULENT PREFERENCE — SURRENDER—RUNNING ACCOUNT.

1. Where an assignee brings his action under the 35th section of the bankrupt act [of 1867 (14 Stat. 534)] to recover of a creditor of the bankrupt property alleged to have been sold or conveyed to him in fraud of the act, and where the defendant in such action denies his liability, resists a recovery, goes to trial, and judgment passes against him, such a judgment conclusively establishes that the creditor sought to obtain a fraudulent preference, and disentitles him to prove up against the estate of the bankrupt, the debt or claim on account of which he received the fraudulent preference. Payment of such a judgment under execution issued is not such a surrender as is contemplated by section 23 of the act, and will not entitle the party to prove up the claim in satisfaction of which he received property from the bankrupt by way of illegal preference.

[Cited in Re Leland, Case No. 8,230.]

2. Sections 23 and 39 of the bankrupt act commented on, and construed to stand together.

3. Where the debt or claim on account of which the illegal preference is received is single and entire, the creditor is entitled to no dividends thereon, though it may have been proved up or allowed before the judgment was obtained which established the fraudulent character of preference; but if he has two disconnected debts, receiving a fraudulent preference as to one only, will not affect his right to prove up the other or to receive dividends thereon.

[Cited in Re Holland, Case No. 6,604; Re Aspinwall, 11 Fed. 138; Re M'Vay, 13 Fed. 445.]

4. An open running account for merchandize sold, consisting of various items of charges and credits at different times, on which was credited the amount at which the property was purchased by way of fraudulent preference, leaving a balance which was proved up before the register against the bankrupt's estate, was held prima facie to be but a single debt or claim, and by reason of such preference disentitled to any dividend on any part thereof.

[Appeal from the district court of the United States for the district of Iowa.]

The following are the facts as they appear from the evidence in the case: Richter was

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

adjudged a bankrupt on his own petition, filed on the 19th day of October, 1868. Cragin is the assignee in bankruptcy. The present controversy is between the assignee and Messrs. Greenwald & Co., who are by far the largest creditors of the bankrupt, and to whom the latter, three days before filing his petition to be adjudicated a bankrupt, sold and transferred his stock of goods, which embraced, as appears from the inventory, nearly all his property, not exempt from execution. Greenwald & Co. filed their claim before the register to be proved against the estate. It consists of a running account for goods and merchandize sold by them, they being merchants, at various times during the years 1867 and 1868, to the bankrupt, who was also a merchant. The total debt side of the account is

|  |  |  |
|---|---|---|
|  | $5,984 | 62 |
| Various credits .................. | 2,983 | 10 |
| Balance ..................... | $3,001 | 52 |
| Oct. 16, 1868. By· mdse........... | 1,471 | 88 |
| Balance .................... | $1,529 | 64 |

Accompanying this account filed with the register, was the following statement, sworn to by Greenwald & Co., to-wit: "Richter owed us for goods sold $3,001.52; but on the 16th day of October, 1868, he sold and delivered to us the stock of goods belonging to him for $1,471.88, leaving a balance due us of $1,529.64." Their debt was proved up and allowed against the estate, in this amount, viz., $1,529.64, and constitutes nearly one-half of all the claims established against it. Subsequently, in April, 1869, the assignee commenced an action against said Greenwald & Co., in the district court of the United States for the district of Iowa, to recover the value of the stock of goods which Greenwald & Co. had thus purchased of the bankrupt. The petition in said action, in substance, alleges that Richter was adjudged a bankrupt on his own petition, October 19th, 1868; that Cragin was appointed assignee, November 21st, 1868, that on the 16th day of October, 1868, Greenwald & Co., defendants, claiming to be creditors of Richter, took and received from him a transfer of a large amount of goods, being his whole stock in trade as a retail merchant, of the value of $3,500, the said transfer being made out of the ordinary course of business, and with a view to prevent said property from being distributed to the creditors of the bankrupt, and to evade the bankrupt act; the said Greenwald & Co. having, as alleged, at the time of receiving such transfer reasonable cause to believe the said Richter to be insolvent. The petition further alleges want of assets to pay debts proved, a demand for the goods of Greenwald & Co.; their neglect and refusal to surrender them, whereby they have converted them to their own use; wherefore the assignee prays a judgment for their value. Greenwald & Co.

filed an answer, denying the allegations of the petition. At the November term, 1869, of the district court, a trial of this action on these issues was had, resulting in a verdict and judgment for the assignee against Greenwald & Co., for $1,566.31, which judgment was never set aside or reversed. Execution was immediately issued, and on the same day the marshal made return thereon that he had received the full amount thereof from Greenwald & Co. After this judgment was rendered, and at the same term, Greenwald & Co. made in the district court a motion as follows: "Now come the said Greenwald & Co., and the court having found the goods of the said Richter were taken by them for the benefit of all of his creditors, move the court for leave to prove up the balance of their claim, viz., $1,471.88, being the amount credited to said Richter, Oct. 16th, 1868, when said goods were obtained." This motion was overruled by the district court, and from its judgment thereon, denying to Greenwald & Co. the right to establish the balance of their debt, an appeal is taken by them to this court. After the aforementioned judgment was rendered in favor of the assignee against Greenwald & Co., for the value of the goods, the assignee, by his counsel, moved the district court "for an order vacating and setting aside the allowance heretofore made of the claim of Greenwald & Co. against the estate of said bankrupt, and directing the assignee not to pay over any dividend to them on the claim proved by them." This motion is based upon the legal effect of the said judgment in favor of the assignee against Greenwald & Co., which conclusively establishes, as the motion claims, that the latter "sought to obtain an illegal preference in fraud of the bankrupt act." The district court sustained this motion, and made an order declaring that Greenwald & Co. were not entitled to any dividend or share in the bankrupt's estate upon the debt theretofore proven against it, and directing the assignee not to pay them any dividend thereon. [Case unreported.] From this order the said Greenwald & Co. also appeal.

[Certain sections of the bankrupt act of March 2, 1867, having relation to the question before the court, may now be mentioned. 14 Stat. 517. By section 18 of this statute it is provided that "no person who has received any preference contrary to the provisions of this act shall vote for or be eligible as assignee." By section 23 it is enacted that: "Any person who, after the approval of this act, shall have accepted any preference, having reasonable cause to believe that the same was made or given by the debtor, contrary to any provision of this act, shall not prove the debt or claim on account of which the preference was made or given, nor shall he receive any dividend therefrom until he shall first have surrendered to the assignee all property, money, benefit, or ad-vantage received by him under such preference." By section 29 it is provided that: "No discharge shall be granted, or if granted shall be valid, if the bankrupt has given any fraudulent preference contrary to the provisions of this act * * * or if he has, in contemplation of becoming a bankrupt, made any pledge, payment, transfer, assignment, or conveyance of any part of his property, directly or indirectly, absolutely or conditionally, for the purpose of preferring any creditor, etc., * * * * or has been guilty of any fraud whatever, contrary to the true intent of this act." Section 35 relates to transfers in fraud of the act, and as to fraudulent preferences is as follows: "If any person, being insolvent, or in contemplation of insolvency, within four months * * * with a view to give a preference to any creditor * * * makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment * * * transfer, or conveyance, or to be benefited thereby * * * having reasonable cause to believe such person insolvent, and that such payment, * * * assignment, or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property or the value of it from the person so receiving it or to be benefited * * * And if such sale, etc., is not made in the usual and ordinary course of business of the debtor, the act shall be prima facie evidence of fraud." Section 39, relating to involuntary bankruptcy, makes such fraudulent preference by a bankrupt or insolvent debtor, an act of bankruptcy, and then, as amended, July 27, 1868 [15 Stat. 227], enacts as follows: "And if such person shall be adjudged a bankrupt, the assignee may recover back the money or other property so paid * * * assigned, or transferred contrary to this act. Provided the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act was intended, and that the debtor was insolvent, and such creditor shall not be allowed to prove his debt in bankruptcy."] [2]

Shiras, Van Duzee & Henderson, for assignee.

Roberts & Fouke, for Greenwald & Co., appellants.

DILLON, Circuit Judge. 1. As to the Motion of Greenwald & Co. The cardinal idea of the bankrupt act is an indiscriminating distribution of all of the effects of the debtor, to all of his creditors. This legislation is essentially founded upon the doctrine that equality is equity. When a debtor finds himself embarrassed, experience has shown that there arises in his mind a strong temptation, either to conceal his property, or to distribute it as his favor or

---

[2] [From 8 N. B. R. 221 (Quarto, 67).]

his enmity, or both may dictate. When creditors perceive their debtor's embarrassment, concert of action for the mutual benefit of themselves and the debtor becomes almost impossible, and the most vigilant or the most unfeeling seek an advantage or priority by means of writs of attachments, or other legal process, or by obtaining mortgages or confessions of judgment. Recognizing the essential equality of right of all the creditors of a common debtor, and the duty of the latter, if he cannot pay all in full, to pay all in equal proportions, and the practical impossibility of accomplishing full and equal distribution without stringent provisions, the bankrupt act prohibits the debtor from making, and the creditor (having reasonable cause to believe the debtor to be insolvent) from accepting any preference, in money or property, directly or indirectly, absolutely or conditionally, which contravenes the policy or has the effect to defeat the purposes of the act.

The temptation to prefer, and the danger of doing so, inhere in the situation of an insolvent debtor; and hence it is (to use language applied to purchases of trust property by trustees) "the wise policy of the law has put the sting of a disability into the temptation, as a defensive weapon against the strength of the danger which lies in the situation." Notes to Fox v. Mackreth, 1 Lead. Cas. Eq. 161.

The 18th, 23d, 29th, 35th, and 39th sections of the bankrupt act abundantly evince the anxiety of the legislature to guard against preferences, which operate as a fraud upon the policy of the act. Such preferences are not only prohibited and declared void, but certain penalties are denounced against creditors who, under the circumstances specified, accept of preferences. Thus it is declared that such a creditor shall not "vote for, or be eligible as assignee" (section 14), and "shall not prove his debt in bankruptcy" (section 39, and compare section 23), and shall be liable to the assignee for the money or property received (section 35).

In the case now under consideration, the debtor, a retail merchant, three days before filing his petition to be adjudicated a bankrupt, sold his whole stock of goods to Greenwald & Co., his largest creditors. The assignee of the bankrupt, after his appointment, commenced, under the 35th section of the bankrupt act, an action against Greenwald & Co. to recover the value of the goods which the bankrupt had transferred to them, in fraud, as it was alleged, of the provisions of that act. The petition in that action made the averments required by the law; among others, Richter's insolvency, his sale of his whole stock of goods to Greenwald & Co., out of the usual course of business, his intent to evade and defeat the bankrupt act, and the purchasers' reasonable cause to believe their vendor to be insolvent, etc. Issue was taken upon these allegations; the jury found for the assignee, and judgment was rendered accordingly, and the amount of the judgment was

paid by Greenwald & Co. to the marshal on execution, but it was paid promptly on the same day the execution issued, or the next. And it is the effect of this judgment upon the rights of Greenwald & Co. as creditors of the bankrupt, that we are now to consider. And first we may remark that this judgment, as between the estate of the bankrupt and Greenwald & Co. conclusively establishes that the purchase of the stock of goods by them from the bankrupt was made in fraud of the bankrupt act. This is res judicata, and Greenwald & Co. are estopped to deny it. To entitle the assignee to a recovery in that suit, he would have to establish: 1. That Richter, when insolvent, or in contemplation of insolvency, made the transfer. 2. That he made it with a view to give Greenwald & Co. a preference. 3. That they had at the time reasonable cause to believe he was insolvent, and that it was made in fraud of the act, or to defeat or evade its provisions.

Having recovered, it is conclusively presumed that the assignee did establish each of these propositions, and if so, he then necessarily established that Greenwald & Co. sought to get a preference, or advantage over other creditors, which was fraudulent in the contemplation of the bankrupt act. Greenwald & Co., having accepted a fraudulent preference, the question is, how does it affect their claim or debt, and their rights as creditors? The answer to this is given in the 23d and 39th sections of the act. By the former section it is enacted that the creditor accepting a fraudulent preference, "shall not prove the debt on account of which the preference was made or given, nor shall he receive any dividend therefrom, until he shall first have surrendered to the assignee all property, money, benefit, or advantage received by him under such preference."

By the latter section named, it is enacted, without qualification, that a creditor receiving a fraudulent preference "shall not be allowed to prove his debt in bankruptcy," and nothing is said about allowing proof of the debt, in case the creditor surrenders to the assignee the property, etc., received by way of preference. It is a settled principle of law that where there is a positive repugnancy between two sections of the same act, the last governs, as presumptively the latest expression of the legislative will. This rule is highly artificial, and is never to be applied where its application is not necessary. Another, and much more reasonable rule of law, is that a statute shall be so construed, if possible, that all of its provisions may stand; and in this case it is possible to give effect to sections 23 and 39 either first by holding the former applicable to constructive, and the latter to actual and intentional frauds; or second, by holding the former applicable alone to cases of voluntary, and the latter alone to cases of involuntary, bankruptcy; or third—which would seem to be the correct view—construing the two in pari materia, applicable to both classes of bankruptcies, and

to all cases falling within their terms, which would, by construction, annex the qualification in section 23 to the proviso in section 39, and both sections thus construed should, as far as applicable by their terms, be applied to cases arising under section 35 of the act. But this is a point on which we need not longer dwell or give any positive opinion, since we will assume in favor of Greenwald & Co. that section 23, which relates specifically to preferences, is the one which governs their rights. By this it is declared that whoever receives a fraudulent preference, "shall not prove the debt or claim on account of which the preference was made or given, nor receive any dividend therefrom until he shall have first surrendered to the assignee all property * * * received by him under such preference."

Under these circumstances, and with this provision in force, Greenwald & Co. made the motion to prove up the balance of their claim, of the denial of which they now complain. Note the motion: it is "for leave to prove up the balance of their claim, viz., $1,471.88, being the amount credited Richter, October 16, 1868, when said goods were obtained."

The statute is that they shall not prove up the debt or claim on account of which the preference was given. It was this precisely which, by the motion under consideration, they sought to have done, and which the court refused to allow.

It is urged by the claimants that this refusal was erroneous because they had, before the time when they made their motion, surrendered to the assignee all property received by them under the preference. This devolves upon us the duty of interpreting the meaning of the word surrender, as it is here used. And it is our opinion, that a creditor who receives goods by way of fraudulent preference, and who refuses the demand therefor which the assignee is authorized to make (section 15), denies his liability, allows suit to be commenced by the assignee, defends it, goes to trial, is defeated and judgment passes against him, which he satisfies on execution, can not be said within the meaning of the statute, to have surrendered to the assignee the property received by him under such preference.

He has surrendered nothing. He accepted a fraudulent preference and defended it to the last. Paying a judgment which he stoutly resisted, and from which he could not escape is not such a surrender as the statute contemplates. To hold that it was, would be against the spirit of the statute, which is to discourage preferences. Such a holding would manifestly encourage them, for if the transaction should be upheld the creditor would profit. if overthrown, he would lose nothing, and stand upon an equal footing with those over whom he had attempted to secure an illegal advantage. and whom he has, by litigation, delayed in the collection of their claims.

As a further argument in favor of this view, it may be suggested that the statute equally prohibits the accepting and the giving of a fraudulent preference. The fraud of the debtor in this respect is punished by disentitling him to a discharge (section 29). It would seem strange if the law provided no penalty against the creditor who participated in the fraud upon the act; and there is no penalty or punishment, if the view of the statute contended for by the appellants' counsel be correct.

As a further argument in support of the opinion above expressed, it may be urged that when section 23 is read in connection with sections 35 and 39, all being in pari materia, it will be seen that the surrender provided for in section 23 is an act to be done by the creditor before the recovery of a judgment against him, as provided by section 35. That is, the assignee may demand of the creditor the property received by him; if he surrenders it, he stands upon the same plane as the creditors, and may prove his debt and receive his dividends. If he refuses to surrender it, the assignee may sue as provided in section 35, and if he recovers, and payment be made on an execution, this is not a surrender (which implies voluntary action on the part of the creditor), but a refusal to surrender. So that the bankrupt act says decisively to every person who, under the circumstances specified, has received a preference: "Surrender what you have received and you shall lose nothing. If you refuse, and the assignee recovers the property or its value, you shall get nothing. Make your election." When this election may be made we are not now required to decide, further than to hold that it is too late to make it after the recovery of judgment by the assignee. In re Tonkin [Case No. 14,094].

2. As to the Motion of the Assignee. It will be recollected that the balance of the debt due Greenwald & Co. after deducting the goods purchased, viz., $1,529.64, was proved up and allowed against the estate of the bankrupt prior to the determination of the action of the assignee against Greenwald & Co., for the value of the goods purchased by the latter of the bankrupt.

After the judgment in favor of the assignee, the latter moved the district court "to vacate and set aside" the allowance of the sum of $1,529.64, and for an order "directing the assignee not to pay over any dividend" to Greenwald & Co. on this claim.

The twenty-third section of the act declares that if any person shall accept a preference contrary to the provisions of the act, he "shall not prove the debt on account of which the preference was made or given, nor shall he receive any dividend therefrom, until he shall first have surrendered to the assignee all property, etc., * * * received by him under such preference." The court sustained the motion of the assignee. and made an

order that he pay no dividends to Greenwald & Co. on that part of their claim which had been previously allowed.

If the debt of Greenwald & Co. was single and entire, the effect of the judgment recovered against them by the assignee was to establish, as an adjudicated fact, that they had received a fraudulent preference in respect to such debt; and if so, they are not entitled to receive any dividend, though their claim may have been previously allowed, they having failed, as above held, to surrender to the assignee the property received under the preference they accepted from their debtor.

The statute is express that such creditor shall neither prove his debt nor receive any dividend therefrom, until he shall have first surrendered, etc. This leaves no room for construction, and the mere fact that the claim was proved up before the register, anterior to the time when the assignee recovered the judgment which established the fraudulent character of the preference, is immaterial.

And here it is proper to be noticed that it is "the debt or claim on account of which the preference was made or given" that shall not be proved, or be entitled to dividends, not some other and unconnected debt. If the debt is single and entire, the illegal preference affects the whole of it, though the property received does not equal it in value. But otherwise, if in their origin or by contract, the debts of the creditor are not single and entire, but divided or divisible and disconnected, and the creditor receives a preference distinctly as to one and not the other; for here he would be entitled to dividends on the one and not on the other. See Secor v. Sturgis, 16 N. Y. 548; Sweeny v. Daugherty, 23 Iowa, 291. The claim of Greenwald & Co. as filed with the register, consisted of a running and apparently continuous account, made up of items of goods purchased at various times. Prima facie, as stated, it constituted but one "debt or claim" within the meaning of the bankrupt act, and hence there was no error in the ruling of the court that, by reason of the fraudulent preference they had accepted, they were not entitled to any dividend in respect to their debt. If they had applied to show that the debt preferred was disconnected from, and not the same debt as that which was proved up, the court would doubtless have granted the application, but apparently it was otherwise, and the court ruled correctly. Its ruling on the motion under consideration is affirmed. It would still be in the power of the district court to allow Greenwald & Co. to show, if they can, that the debt on account of which they received the preference is not the same as that which they proved before the register. If this is shown, the order made would be set aside; if not, it would of course stand. The orders appealed from are both affirmed. Affirmed.