In re ROGERS' MILLING CO.

(District Court, W. D. Arkansas, Ft. Smith Division. June 6, 1900.)

1. BANKRUPTCY—PREFERENCES—PROVABLE CLAIMS.
   Under Bankr. Act 1898, § 57, providing that "the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences," a creditor cannot prove any claim against the bankrupt's estate, though it be a distinct and separate debt from the one preferred, until he surrenders the preference he has obtained.

2. SAME—PETITION BY CREDITOR HOLDING PREFERENCE.
   Under Bankr. Act 1898, § 59, providing that, where the whole number of creditors of any person is less than 12, one of such creditors, whose claims equal the sum of $500, may file a petition to have him adjudged a bankrupt, but limiting such right of petition to creditors only having "provable claims," a creditor is not entitled to maintain such petition who within four months next preceding the filing of the petition has received payment of a claim which is separate and distinct from that upon which the petition is based.

3. SAME—INSOLVENCY—EVIDENCE.
   Evidence that an alleged bankrupt upon the filing of a petition in involuntary bankruptcy had assets that cost over $30,000, while his liabilities amounted in the aggregate to less than $16,000, and that, after allowing a reasonable discount for natural decay and wear and tear, the assets are greater in amount, at a fair valuation, than the liabilities, is not sufficient to support the petition.

In Bankruptcy.

Hill & Brizzolara and L. H. McGill, for petitioner.
James A. Rice, for Rogers Milling Co.

ROGERS, District Judge. This is a case of involuntary bankruptcy. The petition is filed by a single creditor, H. L. Stroud, and the Rogers Milling Company is a private corporation organized under the laws of the state of Arkansas. The undisputed evidence in the case shows that the Rogers Milling Company within four months next before the filing of the petition herein paid a note of $1,500 to the petitioning creditor. Nothing appears either in the petition or the answer of the payment of this note. It was developed by the proof, however, and the fact of the payment is undisputed. The debt upon which the petition is based is a separate and distinct debt from the note which was paid, but they were both promissory notes, and both in existence at the time the payment of the $1,500 note

.was made. The question arises as to whether or not a petitioning creditor who has received a preference can maintain a petition so long as he does not. by the petition, surrender such preference. It was decided under the bankrupt law of 1867 that petitioners, having accepted an unlawful preference in respect of the debts set forth in their petition, could not maintain the petition so long as they did not, by the petition, surrender such preference; and the practice seems to have been to give the petitioners an opportunity to amend the petition in that respect, and, if no such motion was made, to dismiss their petition. In re Rado, Fed. Cas. No. 11,522; In re Hunt, Fed. Cas. No. 6,882; In re Marcer, Fed. Cas. No. 9,060. It will be seen, however, that in each of these cases the payments had been made upon the particular debt upon which the petition was based. Such was not the fact in the case at bar. Under the law of 1867, I have no doubt that the petitioning creditor in this case could maintain the petition, but the law of 1867 differed from the law of 1898 ·in this: In the act of 1898, § 57g, it is provided that "the claims of creditors who have received preferences .shall not be allowed unless such creditors shall surrender their preferences." The language of this provision is much broader than that contained in the former bankrupt act. Under the act of 1867 such creditors were prohibited from proving only the debt or claim on account of which the preference was made. Rev. St. § 5084. Under that provision the courts held that where a creditor had two disconnected debts, and had received a fraudulent preference as to one only, he might prove the other and receive dividends upon it. Loveland, Bankr. p. 257, § 135; In re McVay (D. C.) 13 Fed. 443; In re Aspinwall (D. C.) 11 Fed. 136; In re Richter's Estate, 1 Dill. 544, Fed. Cas. No. 11,803; In re Holland, Fed. Cas. No. 6,604. It has been held, under the above provision of the bankrupt act of 1898, that a creditor cannot prove any claim against the bankrupt's estate until he has surrendered any preference he may have obtained. In re Knost, 2 Am. Bankr. Rep. 471, affirmed in 99 Fed. 409; Electric Co. v. Worden, 2 Nat. Bankr. N. 434, decided by the circuit court of appeals for the Seventh circuit (also, reported in 39 C. C. A. 582, 99 Fed. 400); In re Conhaim (D. C.) 97 Fed. 924.

It would seem, therefore, that under the section of the bankrupt act of 1898, as quoted above, a petitioning creditor, having accepted an unlawful preference in respect of any claim which he may have held against the bankrupt's estate, cannot maintain the petition so long as he does not surrender such preference,—in other words, his claim must be a provable claim; for by section 59b of the bankrupt act of 1898 it is provided that:

"Three or more creditors who have provable claims against any persons which amount in the aggregate, in excess of the value of the securities held by them, if any, to five hundred dollars or over; or if all the creditors of such persons are less than 12 in number, then one of such creditors whose claims equal such amount may file a petition to have him adjudged a bankrupt."

It is, therefore, only creditors who have "provable claims" who may file a petition to have one adjudged a bankrupt, and the claims

of no creditor are provable, under these decisions, so long as he may hold an unlawful preference. But I am not disposed to rest the case upon that point. I am persuaded, after a careful review of the testimony in this case, that when the petition was filed the Rogers Milling Company was not insolvent. The testimony shows that the plant of the Rogers Milling Company, consisting of four lots, a building, machinery and appliances therein contained, cost, when constructed, in the neighborhood of $25,000. It had been constructed 12 or 14 years. A considerable portion of the machinery had been placed in it at a much more recent period. It was in good repair. Of course, it was not as valuable as when it was constructed,—neither the machinery nor the building. In addition to this property, it had other real property, valued by some of the witnesses at twelve or fourteen hundred dollars, and by none of them at less than eight or nine hundred dollars. It had other assets, consisting of grain, flour, mill products, notes, and accounts, of the value of about $6,000. Its indebtedness amounted in the aggregate, when the petition was filed, to $15,820, including principal and interest. Allowing a reasonable and fair discount for natural decay, wear and tear, and the use of the machinery, the court is of opinion that the weight of the testimony shows that the assets were greater in amount, at a fair valuation, than the liabilities, and for this reason the petition in this case should be dismissed at the costs of the petitioning creditor. It is so ordered.