In re E. O. THOMPSON'S SONS.

(District Court, E. D. Pennsylvania. March 26, 1903.)

No. 1,015.

1. BANKRUPTCY—PROVABLE CLAIMS—SURRENDER OF PREFERENCES.

Where two notes were given by a bankrupt at the same time, both of which were held by the same creditor, and the one first maturing was paid within four months prior to the bankruptcy, and during insolvency, the amount so paid must be surrendered, as a preference, to entitle the creditor to prove the other in bankruptcy.

In Bankruptcy. On certificate of referee, Richard S. Hunter, sur claim of Chester National Bank.

The following are the opinions of the referee:

On December 28, 1900, the Chester National Bank purchased two notes— one for $2,500, dated December 20, 1900, payable at three months, and another for. $2,500, dated December 20, 1900, payable at four months. These notes were made by E. O. Thompson's Sons to the order of Benjamin Thompson, and by Benjamin Thompson indorsed. The note falling due March 20, 1901, was sent by the bank, in the due course of business, to the Central National Bank of Philadelphia for collection. This note was payable at the Independence National Bank, and, upon being presented by the Central National Bank at the Independence, it was paid.

The note of $2,500 payable April 22, 1901, was not paid at maturity, and was returned by the Central National Bank, to whom it was sent for collection, protested. This second note of $2,500 is the note upon which the claim of the Chester National Bank is made against the bankrupt estate. The contention of the Chester National Bank is that the two notes represent two separate and distinct debts, and were so carried upon the books of the bankrupt, and that at the time the first note was paid the second note was not payable or collectible.

Counsel cited in support of their contention Abraham Steers Lumber Company, 7 Am. Bankr. Rep. 333, 50 C. C. A. 310, 112 Fed. 406, and the case of Albert Elsasser, 7 Am. Bankr. Rep. 215. These cases are to the point that a full or partial discharge of a debt, made after the debtor is insolvent, does not impair the creditor's right to prove a debt subsequently contracted. Beyond this these cases do not go.

In the case now at hand there was no debt contracted after the discharge of a previous debt. There were two debts contracted at the same time, one of which was paid, and the other not paid. The referee can see no legal distinction between this state of facts and that which arises where upon a debt of $5,000 the sum of $2,500 is paid on account.

The prayer of the petition is granted.

On Reargument.

Upon exceptions of the Chester National Bank to the finding of the referee granting the petition of the trustee for the return of payments received by the said bank, the matter was again argued before the referee. No new authorities were adduced, but stress was laid by counsel upon In re Dickinson, 7 Am. Bankr. Rep. 679, where the referee stated, as a rule which he had adopted, that "a creditor holding distinct debts may prove and be allowed his claim upon one upon which no preference was received, without surrendering a preference received upon another." It is not clear from the report whether this was a decision of the case in hand, or a general statement of opinion by the referee in the case. In any event, it does not appear to the referee to be of the same authority as In re Conhaim, 3 Am. Bankr. Rep. 249, 97 Fed. 923, where, in a case exactly similar to the present, debts being due to a bank upon four promissory notes, and payment made of two of them, the court disallowed the claim of the bank unless it should surrender the payments received.

It seems clear that the purpose of the act was that, among creditors proving their claims, one should not receive a greater proportionate share of the bankrupt estate than another. To make a distinction between a creditor who lends $5,000 upon one promissory note, and receives $2,500 in part payment thereof, and another creditor who lends the same sum on two promissory notes, and receives the same payment, is inequitable and unjust.

The referee sees no reason to alter his decision disallowing the claim.

Julius C. Levi, for trustee.
Lindsay & Harvey, for Chester National Bank.

J. B. McPHERSON, District Judge. The reports of the learned referee are adopted as the opinion of the court, to which I may add the citation of Re Rogers Milling Co., 4 Am. Bankr. Rep. 540, 102 Fed. 687.

---

BOARD OF TRADE OF CITY OF CHICAGO v. CHRISTIE GRAIN & STOCK CO. et al.

(Circuit Court, W. D. Missouri. March 19, 1903.)

1. EXCHANGES — CONTRACT FOR DISTRIBUTION OF QUOTATIONS — LEGALITY OF RESTRICTIONS.

A contract between a board of trade, having a property right in the quotations made on its exchange, and a telegraph company, relating to the transmission and distribution of such quotations by the latter, is not in violation of the anti-trust act of 1890 (Act July 2, 1890, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), as in restraint of trade and commerce, because of a provision that the quotations shall only be furnished to persons who sign an agreement to the effect that they shall not be used in the conduct of a bucket shop.

In Equity. On final hearing.
For former opinion, see 116 Fed. 944.

HOOK, District Judge. The only question of consequence presented at the final hearing which was not fully argued at the preliminary hearing is whether the arrangement between the board of trade and the telegraph companies is violative of the provisions of the Sherman act (Act July 2, 1890, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). This proposition may be roughly stated as follows: The board of trade, having a property right in its quotations, contracted with the telegraph companies for their transmission and distribution by the latter; such transmission and distribution to be confined to persons who would sign an application embodying an agreement to the effect that the quotations should not be used in the conduct of an unlawful business, to wit, a bucket shop. Is such an arrangement an unlawful combination in restraint of trade and commerce, within the meaning of the act of July 2, 1890, popularly known as the "Sherman Anti-Trust Act"? I am of the opinion that it is not.

Let a final decree be prepared in conformity with the above, and the conclusions heretofore announced in this case.