and the other close-hauled to the wind, the one free must take the responsibility of avoiding a collision, and the one close-hauled must keep her way.

2. But if the wind is equally free to both, or if both have it on their beam, each must turn to her own right.

In admiralty.

Mr. Butler, for libellant.
Mr. Rand, for respondent.

WARE, District Judge. The schooner Montezuma, of about 100 tons burthen, sailed from Salem in the early part of January, 1864, Wheldon, master, with an assorted cargo valued at about $7,000, bound to Cayenne, a port of South America, and on the 11th of that month, between the hours of seven and eight o'clock in the evening of that day, she met the British barque Radama, in ballast, bound from New York to Salem, off the Nauset lights of Cape Cod. The two vessels were sailing in nearly, if not exactly opposite directions. The wind was about west, the barque close-hauled on the wind, and the schooner free. The night was clear, with nothing but the ordinary haze on the waters, and the barque showed two lights, and the schooner had probably one when the opposite vessel was first seen, but soon showed another. The schooner saw the barque first, but both saw an approaching vessel soon enough to avoid it, if proper precautions had been taken, but if both continued on their courses a collision would probably take place.

In this situation what were the respective duties of these vessels? The barque was close-hauled on the wind, the schooner was free, and each vessel of course knew the condition of the other in this respect, because the same wind was common to both. One of the first laws of the sea, sanctioned both by the customs of the water, and confirmed by numerous judicial decisions, is that the ship which has the wind free must take on herself the trouble and care of keeping free from a collision, and the consequence is that the vessel close-hauled must keep her course. There can thus be no danger, and the reason of the rule is obvious. The vessel that is free can more easily change her direction. The rule is plain and clear, and the custom was established from motives of safety and convenience by those who are familiar with navigation. Where there is sea-room enough, there can be no difficulty in complying with it.

When two vessels meet, each having the wind equally free, that is, each having it on her beam, then a different rule applies. Each ship is to take her right, and if each takes her own right they will turn in opposite directions and of course there can be no danger. This is equally a law of the sea and was much insisted on in the defence.

1 Pars. Mar. Law, 195, 196, and note. But this rule does not apply to the case when one vessel is close-hauled and the other has the wind free. It may, according to circumstances, be applicable to vessels sailing in narrow seas or rivers, but not where the·· is ample sea-room. In this case both deviated in the same way and they thus came in collision, and the damage was done. But I cannot hold the schooner blamable for acting in obedience to a well-known law, and a well-known custom. The loss must therefore fall on the barque, and there must be an inquiry to ascertain the amount of damage.

NOTE. The amount for which the decree was entered for libellant in this case, was nine hundred and eighty-seven dollars. On appeal by respondent, the decree of the district court was affirmed with costs by the circuit court, at April term, 1866. [Case No. 3,442.]

RADAMA, The (CROWEL v.). See Case No. 3,442.

RADCLIFFE (LEATHERBERRY v.). See Case No. 8,163.

## Case No. 11,522.

### In re RADO.

[6 Ben. 230.] [1]

District Court, S. D. New York. Nov., 1872.

#### BANKRUPTCY—PLEADING—PREFERENCE.

A petition in involuntary bankruptcy, which states the giving to the petitioner of an unlawful preference in respect to the debt, but does not surrender the preference, will be dismissed.

This was a petition in involuntary bankruptcy, which set forth a debt due to the petitioners, for tobacco sold and delivered by them to the bankrupt [Peter Rado], to the amount of $2,027.16, and alleged that on account of that he had returned to them tobacco worth $1,140.10, at such a time as to make such return an unlawful preference of their debt to such amount.

R. S. Newcombe, for petitioners.
Peter Cook, for Rado.

BLATCHFORD, District Judge. The petitioners, having accepted an unlawful preference in respect of the debt set forth in their petition, cannot maintain the petition, so long as they do not, by the petition, surrender such preference. An opportunity will be allowed them to move, on notice, for leave to amend the petition in that respect. If no such motion is made, the petition must be dismissed.

RADOWITZ (UNITED STATES v.). See Case No. 16,112.

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]