In re FT. WAYNE ELECTRIC CORP.

COLUMBUS ELECTRIC CO. v. WORDEN.

(Circuit Court of Appeals, Seventh Circuit. January 25, 1900.)

No. 640.

1. BANKRUPTCY—PROOF AND ALLOWANCE OF CLAIMS—PREFERRED CREDITOR.

Under Bankr. Act 1898, § 57g, providing that the claims of creditors of a bankrupt who have received preferences shall not be allowed unless they surrender their preferences, a creditor who has actually received a preference, by a partial payment of his debt, within four months before the bankruptcy of the debtor, cannot have his claim allowed against the estate of the bankrupt without surrendering the preference; and this, notwithstanding the fact that he received the payment innocently, and that he had no knowledge or cause to believe that the debtor was insolvent or that a preference was intended.

2. SAME—PREFERENCES—PAYMENT OF MONEY.

Payment of a debt in money is a transfer of property, within the purview of Bankr. Act 1898, § 60a, providing that a debtor shall be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property, and the effect of the enforcement of such transfer will be to enable one of his creditors to obtain a greater percentage of his debt than other creditors of the same class.

Appeal from the District Court of the United States for the District of Indiana.

The Columbus Electric Company, the appellant, on the 9th of December, 1898, was the creditor of the Ft. Wayne Electric Corporation to the amount of $14,646.08, and on that day received the three notes of the debtor, each bearing date upon that day, and being for equal portions of the indebtedness, and payable, respectively, in 30, 60, and 90 days from that date. The first note matured January 11, 1899, and on the 20th of January, 1899, that creditor

received from its debtor, in part payment of the note, the sum of $2,500 in money; and this without the knowledge of the insolvency of the debtor, and without reason to believe the debtor to be insolvent, and without reason to believe that any preference was thereby intended by the debtor over other creditors. Afterwards, creditors of the Ft. Wayne Electric Corporation filed their petition in bankruptcy against that corporation, and on the 25th day of January, 1899, the corporation was duly adjudged a bankrupt. On the 24th day of March, 1899, the appellant filed its claim in such bankruptcy proceedings for the balance of the amount due upon the three promissory notes. The referee certified the question of the allowance of the claim to the district court sitting in bankruptcy, which court afterwards ordered as follows: "(1) That if the said Columbus Electric Company shall, on or before thirty days from this date, surrender to the trustee, for the benefit of the estate of said bankrupt, the sum of $2,500 so paid January 20, 1899, then the full amount of said claim, at the date of filing the petition in bankruptcy herein, to wit, the sum of $14,884.56, is allowed as an unsecured claim, and that said sum is ordered to be entered upon the books of the trustee as the true sum upon which to compute dividends; (2) that, if such claimant shall fail or refuse to repay said sum of $2,500 on or before thirty days from date hereof, the said claim is disallowed and expunged from the list of claims upon the trustee in this cause." This ruling is brought here for review. The opinion of the court below is reported in Re Ft. Wayne Electric Corp. (D. C.) 96 Fed. 803.

R. S. Robertson and William S. O'Rourke, for appellant.

William J. Vesey, John Morris, Jr., O. N. Heaton, and William P. Breen, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

The question presented is this: Can a creditor, who has within four months of his debtor's bankruptcy innocently received a payment upon his debt, be permitted to prove his debt in the bankruptcy proceeding, and to receive from the estate of the bankrupt a dividend thereon, without surrendering the preference received? The question is one purely of statutory law, and depends for its solution upon the construction to be given to certain sections of the bankruptcy act. 30 Stat. 541.

Section 60a defines a "preference" as follows:

"A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Section 60b provides that the trustee may recover from the recipient any preference received within four months of the bankruptcy, if the latter had reason to believe that a preference was intended. Section 3 defines acts of bankruptcy, one of which is: "(2) A transfer, while insolvent, to a creditor of any portion of his property, with intent to prefer such creditor." Subdivision b of that section provides that an involuntary petition in bankruptcy may be maintained for such act of bankruptcy committed within four months before the filing of the petition. Subdivision 25 of section 1, treating of definitions, provides that the word "transfer," as used in the act, shall "include the sale and every other and different

99 F.—26

mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security." Section 57g provides as follows: "The claims of creditors who have received preferences shall not be allowed unless such creditors 'shall surrender their preferences." It is apparent from these provisions of the law that not all preferences by an insolvent debtor may be avoided. The congress has seen proper to provide that the trustee in bankruptcy may recover preferences in the event only that the creditor had reasonable cause to believe that a preference was intended. It was not designed to interrupt the usual course of business, or to compel a creditor to pay back that which he had innocently received. This, however, does not conclude the case. When a creditor, who has in fact received a preference, comes into the court of bankruptcy seeking to share with other creditors in the estate of the bankrupt, he must come, if at all, upon the terms and the conditions that the law imposes. It is the fundamental principle of the bankrupt law that "equality is equity." The act seeks to marshal the assets of the bankrupt, recovering all property disposed of by the bankrupt in fraud of the act, and to distribute the fund equally among all the creditors in proportion to the amount of their respective claims. This principle we conceive to be distinctly recognized by section 57g. That section takes notice of the fact that a creditor who has been innocently preferred cannot be compelled to return that which he has received, but it says to him: While the law will not interfere with you with respect to that which you have received, and because you received it innocently, yet, if you come to the court asking that you may share with the other creditors in the remaining estate of the bankrupt, you must surrender the preference which you have received, however innocently; for equality is equity, and he who seeks equity must do equity. The act of preference is condemned by the law, but because you were innocent in the taking of it the law will not disturb your possession of that which you received; but, when you ask the aid of the court to give you a further share of the estate, you must be content to place yourself upon an equality with other creditors, and that can only be done by a surrender of the preference which you have received. We think this the clear intent of the lawgiver. We do not need to enter upon a critical examination of the various phrases of the act, or to indulge in an investigation of the technical meaning of the words there used. That has been fully gone over in the opinion of the court below whose decision is here under review, and in which, in general, we concur.

This view of the proper construction to be given to section 57g finds support in the provisions of section 65d, which declares that a creditor, who has received through a court of bankruptcy in a foreign country a share of his debt, and seeks to prove the balance of that debt in bankruptcy in this country, shall not receive any part of his debt here, until the creditors resident here shall first have received a dividend equal to the amount received by that creditor through such foreign proceedings. This goes upon the doctrine of equality among creditors. The courts here had not jurisdiction over the

property of the bankrupt in the foreign country. What the creditor there received was legally obtained and adjudged to him as of right. The court here could not take it from him, and yet, in the same view in which we regard section 57g, the law declares that such creditor shall not, in the distribution of the estate here, have the benefit of that which he legally received elsewhere, but he must stand upon the footing of equality with creditors here, and they shall first be paid out of the estate here an amount equal to that which such creditor received there. The language of section 57g is broad and comprehensive, and is not susceptible of the restricted construction sought to be placed upon it, unless the word "preference" should receive a narrow and strained construction.

It is urged that the term "preference" means a transfer of property, and not a payment of money. In other words, that an insolvent debtor, seeking, in fraud of the act, to prefer in part certain of his creditors, cannot so do by transfer to them of his property, but he may sell that property, and turn it into money, and with impunity pay his creditors with that money, and, although they have received it with guilty knowledge of the intent to prefer and of the insolvency of the debtor, the trustee cannot recover it back, because it was paid in money, and not in property. We think this, a narrow view of the law, and one that would work incalculable mischief. We are not disposed to place such a construction upon the act, if it can in reason be avoided, and we are unwilling to put upon the section what we deem to be a strained construction of a broad term, in view of the mischief which would follow. It may not be denied that there are words and phrases in the act, as pointed out in the case of in Re Piper, 2 Nat. Bankr. N. 7, elsewhere unreported,[1] which lend support to the opposite contention, but we think that the general harmony of the act would be marred by the narrow construction sought to be placed upon the phrase "preference." The bankrupt here intended to prefer the appellant in the sense that while insolvent it sought to give an advantage over other creditors. It was received, to be sure, innocently, and without knowledge of that intent, but the payment none the less worked a preference. It gave to the appellant an undue advantage over other creditors, and, while the act will not permit a recovery by the trustee of the payment because it was received innocently, it none the less remains that the meaning of the act is that, if the appellant seek further payment out of the estate of the bankrupt, he shall share equally with other creditors with respect to his claim. That can only be accomplished by a surrender of the preference received as a condition of further payment out of the bankrupt estate.

This construction, as we think, works out the highest equity between creditors. It may be difficult to reconcile the various phrases used in the act, but the construction which we place upon the section gives to the language therein employed its natural meaning. The case of In re Conhaim (D. C.) 97 Fed. 923, reaches the same conclusion. The order is affirmed.

[1] Oral ruling. No opinion filed.