In re GILLETTE et al.

(District Court, W. D. New York. October 8, 1900.)

No. 2,109.

1. BANKRUPTCY—PREFERENCES—KNOWLEDGE OF DEBTOR'S INSOLVENCY.
    A bank is chargeable with notice of the insolvency of a debtor from whom it receives a payment, and that such payment constitutes an unlawful preference under the bankruptcy act, where its president had knowledge of such insolvency, gained while acting for the bank in the matter of such indebtedness.

2. SAME — CREDITORS OF PARTNERSHIP — RECEIVING PAYMENT OF INDIVIDUAL DEBT OF PARTNER.
    Where a bank holding notes of a firm and also of an individual partner, with knowledge that both were insolvent, received payment of the note of the partner from proceeds of firm property, such payment constituted a preference, which, under Bankr. Act 1898, § 57g, precludes the bank from proving its debt against the firm in bankruptcy unless it surrenders such preference.

3. SAME—INVOLUNTARY PROCEEDING—RECEIPT OF PREFERENCE BY PETITIONER.
    Under Bankr. Act 1898, § 59b, which provides that "three or more creditors who have provable claims" against a debtor which amount in the aggregate to $500 above the value of securities held may petition to have him adjudged a bankrupt, a creditor who has received a preference within the provision of section 57g has not a "provable claim" which makes him eligible as a petitioner until he has surrendered such preference; and where there are only three petitioners, of whom he is one, the objection is jurisdictional, and is not waived by a failure to make it in the answer, but may be raised at any time, and no adjudication will be made on such petition unless the preference received is surrendered to the court.

4. SAME—PROCEEDING ON PETITION—NOTICE TO CREDITORS.
    No power is vested in a court of bankruptcy by Bankr. Act 1898 to compel a creditor to become a petitioner in an involuntary proceeding, nor is
    104 F.—49

it the province of the court to serve notice on creditors who have not appeared of the proposed dismissal of a petition because of the insufficient number of eligible creditors joining therein.

5. SAME—INVOLUNTARY PETITION—ESTOPPEL OF CREDITOR.

A creditor of a firm, who, with others, advised a sale of its property for a certain sum, and the distribution of the proceeds among the creditors pro rata, by way of compromise. is not thereby estopped from joining in a petition in bankruptcy against the debtors which alleges the transfer of the property as an act of bankruptcy, where after such transfer the proceeds were diverted by the debtors to other purposes than that proposed.

In Bankruptcy. On motion to confirm report of special master appointed to ascertain and report to the court the facts touching the acts of bankruptcy alleged to have been committed by Ralph W. Gillette and Louis Prentice, and by the firm of Gillette & Prentice, with his conclusions thereon.

William C. Watson, for petitioner.

Wade & Stevenson, for respondents.

HAZEL, District Judge. This is an involuntary proceeding in bankruptcy. The petitioning creditors are Dunn, Salmon & Co., a corporation, the Bank of Batavia, a banking corporation, and D. Armstrong & Co., a co-partnership. The special master to whom the matter was referred to take proof and report has found that the firm of Gillette & Prentice have committed acts of bankruptcy while insolvent, and within four months previous to the filing of the petition, in this: that the alleged bankrupt, Gillette, on or about the 3d day of January, 1900, conveyed and transferred to William E. Webster, his brother-in-law, who acted in behalf of Sarah A. Showerman and Jennie R. Showerman, a material part of the property of the firm (being stock of goods and fixtures owned by the firm), with intent to hinder, delay, and defraud the creditors of the firm; that said firm has committed a further act of bankruptcy, in that while insolvent, and within four months previous to the filing of the petition, the said firm, through the alleged bankrupt, Gillette, on or about the 3d day of January, 1900, conveyed and transferred to the Bank of Batavia, one of the petitioners herein, the sum of $4,000 (being a part of the property of the firm of Gillette & Prentice), in payment of the individual debt of said Gillette, with intent to hinder, delay, and defraud the creditors of the firm. After the most careful consideration of the evidence in this case, I have no hesitation in sustaining the report of the special master in reference to the acts of bankruptcy committed by the alleged bankrupts. The Bank of Batavia had previous knowledge of the insolvent condition of the firm of Gillette & Prentice when it accepted payment of the note. The facts are substantially as follows: A few days before the payment of the note to the bank the president of the bank became aware of the insolvent condition of the alleged bankrupts. January 2, 1900, Mr. Armstrong, one of the petitioners herein, the president of the bank, and Gillette talked over the financial affairs of the alleged bankrupts. After discussing the amount of the assets and other property, the aggregate of which was not sufficient to pay their debts, a settlement of 50 cents on the dollar was recommended by the president of the bank,

representing the Bank of Batavia, one of the petitioners herein, and Mr. Armstrong, representing D. Armstrong & Co., also petitioners herein. The stock and fixtures inventoried $7,200, and were claimed to be of the estimated value of $4,320. The liabilities at this time were estimated at $5,300. January 3, 1900, Webster bought the property for $4,000, with money received from Mrs. Showerman and her daughter, who are mother-in-law and sister-in-law, respectively, of Gillette, and paid the sum of $4,000 to Gillette, who immediately thereafter paid the note at the bank, instead of using the money received in an endeavor to compromise with his creditors, of which there was talk between two of the petitioners herein and Mr. Gillette and Mr. Webster. January 4, 1900, the petition herein was filed to have the firm of Gillette & Prentice adjudged bankrupts. The indebtedness of the Bank of Batavia, upon which it claims the right to petition herein, is a note of $2,300 due and owing by Gillette & Prentice as partners.

It is insisted on the part of the Bank of Batavia that it accepted the sum of $4,000 to apply on an individual note of Gillette, in the ordinary course of business, and without any knowledge of the facts, and that the bank had no alternative; that, when payment of this note was tendered by the maker, it was obliged to accept such payment, and cancel and deliver up the note, as it did. It seems to me that the negotiations existing between the president of the bank and Gillette and Webster a few days before the petition herein to adjudicate Gillette & Prentice bankrupts was filed gave sufficient knowledge to the Bank of Batavia of the insolvency of Gillette & Prentice. The circumstances attending their negotiations give rise to more than a suspicion of possible insolvency. The bank had more than reasonable cause to believe that Gillette & Prentice were insolvent. The facts and circumstances of their financial condition were brought home to the bank, and the president of the bank sufficiently interested himself in the financial condition of the debtors to place himself in communication with other debtors and endeavor to effect a compromise. In re Eggert (C. C. A.) 102 Fed. 735, 4 Am. Bankr. R. 449. It follows that the Bank of Batavia is chargeable with that knowledge of the facts which such inquiries as its president made should reasonably be expected to disclose. In Re Conhaim (D. C.) 97 Fed. 923, 2 Nat. Bankr. N. 148, the court said:

"Where a bank holds several notes of a bankrupt, and payments have been made within four months before the filing of the petition in bankruptcy, and after the petitioner became insolvent, and those payments have been so applied that one of the notes is left wholly unpaid, the bank cannot assume the position of an unpreferred creditor as to this wholly unpaid promissory note; for the prohibition contained in section 57g is not limited to the particular debt or chose in action on account of which a preference has been received, but it refers to creditors who have received a preference, and provides that the claim of such creditors shall not be allowed unless they surrender the preference received."

The distinction between the Conhaim Case and the case at bar is that here the note paid was an individual obligation of Gillette, while the indebtedness claimed by the bank to be a provable claim is a promissory note made jointly by the alleged bankrupts. The

money paid, however, to the bank was the proceeds of the partnership property owned by Gillette & Prentice; and such a transfer is fraudulent and void as to the creditors of the firm, unless the firm was at the time solvent, and sufficient property remained to pay the partnership debts. Menagh v. Whitwell, 52 N. Y. 146. The proceeds of the sale of partnership property, where an adjudication in bankruptcy is had, must be appropriated to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus is added to the assets of the individual partners. Section 5f of the bankrupt act. Proof of the claim of the partnership estate against individual estates, and vice versa, is permitted. Both the individual estates and partnership estate may be marshaled, so as to prevent preferences, and secure an equitable distribution of the property of the several estates. Section 5g. The transfer of the partnership interest by Prentice to Gillette does not deprive creditors of the right to hold partnership assets for payment of their claims; and creditors having claims against an insolvent debtor who is a member of a copartnership cannot, where the debtor has been adjudicated bankrupt, receive dividends from partnership assets until the co-partnership creditors have been paid in full. In re Wilcox (D. C.) 94 Fed. 84, 2 Am. Bankr. R. 117. I am of the opinion that the payment of $4,000 to the bank was an unlawful preference, which gave to the Bank of Batavia a greater percentage of its debt against Gillette, as an individual, than any other creditor.

An important question in this case, however, and which was not presented to the special master, is whether the Bank of Batavia, which has accepted and retains an unlawful preference, may petition to have the said Gillette & Prentice, from whom such unlawful preference was obtained, declared involuntary bankrupts. By section 59b of the bankrupt act it is provided that:

"Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to five hundred dollars or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

It is argued with much force that the true intent of the act contemplates that where a petition is filed by three creditors, and for any reason it is claimed that one of such creditors is disqualified from uniting in that petition, that fact must be set forth by answer, in order that the facts denied may be submitted to the special master for examination; that the answer in this case, by not denying that the petitioners have provable claims against the co-partnership assets, admits the allegation, and it is too late, after the master has made his report and all the evidence has been taken, to raise this question; and that the Bank of Batavia has a provable debt against the co-partnership assets, whatever may be said of its claim against the individual assets of Gillette. Under the act of 1867, a person who committed an act of bankruptcy was adjudged a bankrupt on the petition of one or more of his creditors, the aggregate of whose debts provable under the act amounted to at least $250. When

under that act a person was adjudged a bankrupt, his assignee was empowered to recover back the money or other property so paid, conveyed, sold, assigned, or transferred contrary to the act; and the person receiving such preference, having reasonable cause to believe that fraud under the act was intended, was not permitted to prove his debt in bankruptcy. It is generally held by the decisions that a creditor who has given his consent to an act is estopped from thereafter urging it as an act of bankruptcy. In re Israel, 12 N. B. R. 204, Fed. Cas. No. 7,111; In re Schuyler, 2 N. B. R. 249, Fed. Cas. No. 12,494; In re Williams, 14 N. B. R. 132, Fed. Cas. No. 17,-706. Creditors who had been fraudulently preferred were not counted, in determining whether a sufficient number had joined in the petition. In re Israel, supra; In re Hunt, 5 N. B. R. 493, Fed. Cas. No. 6,883; Clinton v. Mayo, 12 N. B. R. 39, Fed. Cas. No. 2,899; In re Rosenfields, 11 N. B. R. 86, Fed. Cas. No. 12,061. In Re Rado, 6 Ben. 230, Fed. Cas. No. 11,522, it was held that:

"A petition in involuntary bankruptcy which states the giving to the petitioner of an unlawful preference in respect to a debt, but does not surrender the preference, will be dismissed."

Section 59b and section 60 of the act of 1898 are similar to the provisions of the act of 1867, in the point under discussion, except that under the act of 1898 three or more creditors who have provable claims are required to petition to have a person adjudged an involuntary bankrupt, while under the former act one or more persons were required for this purpose. By the amendment of 1874 jurisdiction is given in involuntary proceedings only in cases where a fourth in number and a third in value of the creditors unite in the petition. By section 57g of the present act it is provided, as we have seen, that "the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences"; and it is held that an innocent creditor may keep a preference which he receives, but he is not permitted to share in the distribution of the bankrupt's estate unless the preference received by such creditor is surrendered. Electric Co. v. Worden, 39 C. C. A. 582, 99 Fed. 400, 2 Nat. Bankr. N. 434. But compare In re Smoke (D. C.) 104 Fed. 289, 4 Am. Bankr. R. 434; In re Alexander (D. C.) 102 Fed. 464, 4 Am. Bankr. R. 376; and In re Piper, 2 Nat. Bankr. N. 7. The fact, therefore, that three or more creditors who have provable claims may file a petition to have a person adjudged a bankrupt is strictly a jurisdictional one. The authorities under the act of 1867 bear out this contention. In Re Mason (D. C.) 99 Fed. 256, 2 N. B. R. 425, the court said:

"Want of jurisdiction over the subject-matter may be taken advantage of at any time, and it may be collaterally attacked; but, where the objection goes merely to want of jurisdiction of the person or thing, there may be a waiver of the objection or restriction as to the manner and time of making it."

And in Carriage Co. v. Stengel, 37 C. C. A. 210, 95 Fed. 637, 2 Am. Bankr. R. 383, Judge Taft said:

"Where petition in an involuntary proceeding is answered without objection to its form, by such answer the parties have waived all formal and modal defects in the petition which do not reach to the jurisdiction of the court."

The petitioning creditors in involuntary proceedings must come within the provisions of section 59b of the bankrupt act. It is necessary that three creditors unite, and show that their claims, in excess of the value of securities held by them, amount to over $500. If this is not done, jurisdiction is not conferred on the court. In re Rogers Milling Co. (D. C.) 102 Fed. 687, 2 Nat. Bankr. N. 973, is a case analogous to the one at bar. The Rogers Milling Company within four months next before the filing of the petition gave a note of $1,500 to the petitioning creditor. The debt upon which the petition was based was a separate and distinct debt from the note which was paid, but they were both promissory notes, and both in existence at the time the payment of the $1,500 was made. This, it was held, was an unlawful preference, and therefore the creditor could not maintain a petition, as long as such preference was not surrendered; and the court, distinguishing the cases in point under the act of 1867, said:

"Only creditors who have provable claims may file a petition to have one adjudged a bankrupt, and the claims of any creditor are provable, under these decisions, as long as he may not hold an unlawful preference."

It was held by this court, in an unreported case, where the facts showed that a preference was obtained by a judgment creditor, that, the preference so obtained not being a fraudulent one, the creditor was not estopped from filing the petition. The judgment creditor did, however, by its preference, obtain a greater percentage of its debt than any other creditor; and therefore it was held that, in order to maintain its petition, such preference so obtained must be surrendered. It was required of the petitioner who had obtained the preference that, before an order adjudicating the alleged bankrupts could be entered, it pay into court the amount of money received by it. That ruling will be followed in this case. The Bank of Batavia cannot maintain its petition to adjudicate Gillette & Prentice bankrupts so long as the bank does not surrender the preference obtained by it.

I am asked by counsel for petitioners, if I come to the conclusion that an adjudication in bankruptcy cannot be had upon this petition, that the proceedings be not dismissed, but that an order to show cause be entered, and served upon creditors who have not petitioned, requiring one or more of them to enter their appearance and join in this petition. Such a proceeding, it is claimed, would be justified by section 59f, which reads as follows:

"Creditors other than original petitioners may at any time enter their appearance and join in the petition or file an answer and may be heard in opposition to the prayer of the petition."

No power is vested in the court by the bankrupt act of 1898, nor was any power vested in the bankruptcy court by any previous act, to compel a creditor to become a petitioner in an involuntary proceeding. It was said in Neustadter v. Dry-Goods Co. (D. C.) 96 Fed. 830, 3 Am. Bankr. R. 98, that:

"There is no right given to other creditors to come in and take the conduct of the case out of the hands of the original petitioners, and it cannot reasonably be presumed that congress intended to authorize different creditors to

come in successively and retry issues which have been decided, and in that way make the pendency of involuntary cases perpetual."

The alleged bankrupts cannot be deprived of setting up a defense to a new petition, nor ought they to be barred from contesting the right to petition of new parties.

It is insisted by counsel for the alleged bankrupts that D. Armstrong & Co., other petitioners herein, are estopped from claiming that the transfer to Webster was an act of bankruptcy, because that firm consented to and advised such transfer. I can find no evidence in the case that would justify holding that the creditors Armstrong & Co. have not the right to petition in this proceeding, or that they are precluded from so doing. The conversation between Gillette, Webster, and Armstrong was to the effect that a sale of the partnership assets for the sum of $4,000 was advisable. Negotiations were then pending or under way to distribute the proceeds of the sale of stock of the firm of Gillette & Prentice to the creditors of the firm by paying them 50 cents on the dollar. This was not done. The proceeds of the sale of the property, as we have seen, were diverted to another purpose. If, however, any creditors affected thereby, not parties to this proceeding, deem themselves entitled to consideration by virtue of section 59g, they will be given an opportunity to enter their appearance and join in the petition within the time hereinafter limited.

Upon deposit with the clerk of this court of the sum of $4,000, the amount of the preference obtained by one of the petitioning creditors, the Bank of Batavia, within 20 days from the entry and service of an order to that effect, an order of adjudication may be entered herein; otherwise, the proceeding is dismissed. Within such time limited, however, any innocent creditor may intervene herein, and the matter may then be disposed of in accordance with the provisions of section 59f of the bankrupt act.