In re CHAPLIN.

(District Court, D. Massachusetts. March 20, 1902.)

No. 4,534.

1. COMPOSITION WITH CREDITORS—EFFECT OF SECRET PREFERENCE.

    If a debtor entering into a composition with his creditors secretly pays one of them more than contemplated in the composition, the preference so given is fraudulent, not only as against the debtor, but as against the other creditors, and, in the interest of both, is voidable.

If the amount of the preference has not been paid, its payment cannot be enforced; and, if paid, it may be recovered back, even though the payment was voluntary, at least by a trustee in bankruptcy of the debtor, who represents his creditors. The further effect of such a preference is to avoid the composition as to the innocent creditors, who may retain the amount received, and enforce against the debtor the amount remaining due on their original claims, but to leave the composition binding on the preferred creditor, who, after returning the preference, may retain the amount due him under the composition, if received, or enforce the notes given therefor.

**2. BANKRUPTCY—PROVABLE DEBTS—SURRENDER OF PREFERENCES.**

Where a creditor of a bankrupt in a former composition between the bankrupt and his creditors received a secret preference, which, under the general principles of equity, was fraudulent and voidable, such preference may be recovered by the bankrupt's trustee, although received more than four months prior to the bankruptcy; and the creditor must surrender the same before he can prove his debt, whether it arose out of the composition, or was subsequently contracted.[1]

**3. SAME—AMOUNT OF PREFERENCE—NOTE OF THIRD PARTY.**

A debtor effecting a compromise with his creditors transferred to one, as a secret preference, a note of a third person, which the creditor applied, at its face value, on his debt; receiving payment on the balance due him at the composition rate. The debtor was afterwards adjudged a bankrupt, and the creditor sought to prove other debts against his estate. *Held* that, in determining the amount of the fraudulent preference received by him in the composition, he must be charged with the note at its face value, regardless of the amount which he actually realized from it.

**4. SAME—MANNER OF ENFORCING SURRENDER.**

Where a creditor of a bankrupt has received a fraudulent preference, recoverable by the trustee, such preference will not be treated as a set-off, either to reduce the amount of his claim, or against the dividend to be received thereon, but the amount must be surrendered to the trustee before he will be permitted to prove an independent debt.

In Bankruptcy. On review of decision of referee allowing the claim of a creditor.

Jesse C. Ivy, for trustee.
Charles K. Cobb, for creditor.

LOWELL, District Judge. The trustee seeks to review the decision of the referee allowing the claim of the Batchelder & Lincoln Company. That claim is made up of two parts: (1) A note for $5,800; (2) merchandise indebtedness of about $4,500.

1. The following facts are not in dispute: On January 1, 1896, the bankrupt owed the creditor $12,026.94. He had made a voluntary assignment for the benefit of his creditors, and they agreed to take 50 per cent. on their indebtedness. On January 23d the bankrupt delivered to the creditor certain notes made by the former. At the same time he agreed to hold for the creditor's benefit a note of one Stevens, made to the bankrupt, which note was afterwards transferred to the creditor. The creditor advanced money to the bankrupt to pay the composition. The amounts of the several notes and the account of the transaction were as stated in the memorandum copied below, which was made at the time between the bankrupt

---

[1] See Bankruptcy, vol. 6, Cent. Dig. § 500.

and Mr. Tileston, the treasurer of the creditor. This is not now disputed by the creditor, though it was not admitted at the hearing before the referee, whose attention was not particularly directed to it:

| | |
|---|---:|
| B. & L. claim............................................ | $12,026 94 |
| C. H. Stevens note on demand............................ | 3,411 28 |
| | 2)8,615 66 |
| 50% of balance of claim................................. | $ 4,307 83 |
| Loan from B. & L. Co.................................... | 10,000 00 |
| Bal. of claim due....................................... | 4,307 83 |
| | $14,307 83 |
| Paid by check.......................................... | 6,013 47 |
| | $ 8,294 36 |

In Settlement with the B. & L. Co.

Notes Dated January 23, 1896.

| | |
|---|---:|
| $1,000.00. Int. 1 mo. 3 da............................ $ | 5 50 |
| $1,000.00. Int. 2 mo. 3 da............................ | 10 50 |
| $1,000.00. Int. 3 mo. 3 da............................ | 15 50 |
| $1,307.83. Int. 4 mo. 3 da............................ | 26 51 |
| $3,986.53. Int. 4 mo. 3 da............................ | 81 73 |
| | $ 140 04 |

The creditor now further explains this transaction as follows (and, subject to some further observation, I believe the explanation is correct): The face of the Stevens note was first deducted from the general indebtedness due January 8th. One-half the balance was then figured, to determine the balance to which the creditor was entitled under the composition. The first four notes were given in payment of this balance. Ten thousand dollars was advanced by the creditor to the bankrupt, with which to pay the composition. Inasmuch as the assignee and the other creditors were not to be informed of the transaction between the creditor and the bankrupt, the creditor was paid by the assignee, in cash, 50 per cent. of its original claim, which payment was immediately treated as a repayment of part of the loan of $10,000. The fifth and last note was given for the balance of that loan. In substance, the transaction amounted to this: Instead of 50 per cent. of its claim in cash, the creditor received $4,307.83 in notes of the bankrupt, and the Stevens note for $3,411.28, on which last note some interest was then due. Furthermore, the creditor lent the bankrupt about $4,000, for which a separate note was given. The note of $5,800 represents, by renewals, this last note of about $4,000, and a subsequent and wholly unconnected indebtedness of $1,800. Chaplin was adjudicated bankrupt on an involuntary petition filed April 9, 1901.

Upon the face of the figures the Batchelder & Lincoln Company received more than did the other creditors, but the company's counsel contends that there was no fraud in taking the Stevens note. It may have been worth less than its face value, and he argues that the fair value of the Stevens note and of the notes for $4,307.83 amounted

to no more than 50 per cent. of the creditor's original claim, and so the company took no advantage of the other creditors. But the failure to explain the transaction to the assignee and to the other creditors leaves no doubt in my mind that an improper preference was made and intended. The whole transaction, including the large advance made by the creditor to the bankrupt, was so complicated that neither the creditor nor the bankrupt may have intended any serious wrong, yet a preference, fraudulent in the eye of the law, was given and received. The effect and amount of this preference must now be determined. Conflicting decisions and dicta, and the want of authority binding this court, call for a somewhat extended examination of the law. There are three parties to be considered in dealing with a transaction of this sort,—the debtor, the preferred creditor, and the innocent creditors. The rights and liabilities of one cannot be determined satisfactorily without considering those of all the others. The attempt to deal with one party at a time has led to confusion.

If a debtor, entering into composition with his creditors, secretly pays one of them more than the amount stated in the composition, the preference so given is deemed fraudulent. 1 Story, Eq. Jur. (13th Ed.) 384. This is true even if the preferred creditor provides the money for the payment of the composition offer. Wood v. Barker, L. R. 1 Eq 139. If the preference consists of a note or other obligation given by the debtor, the debtor has a good defense to a suit by the preferred creditor on the obligation. If the note has been transferred to a bona fide holder for value, and so the debtor is compelled to pay it, he can recover the amount so paid from the preferred creditor. If the preference consists of money or other property, that money or property can be recovered back directly by the debtor from the creditor. The preference thus given is deemed fraudulent and voidable for two reasons: The first, because the transaction is deemed to be an oppression of the debtor by the creditor; the second and more important, because it is deemed to be a fraud committed by both the debtor and the preferred creditor upon the other creditors who are ignorant of the preference. "Every composition deed is in its spirit, if not in its terms, an agreement between the creditors themselves, as well as between them and the debtor. It is an agreement that each shall receive the sum or the security which the deed stipulates to be paid or given, and nothing more, and that upon this consideration the debtor shall be wholly discharged from all the debts there owing to the creditors who signed the deed." Breck v. Cole, 4 Sandf. 79, 83. The wrong done to the innocent creditors is at once less and greater than that done to the debtor himself. On the one hand, they sustain no direct loss. They have compounded their claims for so much, and they receive the amount of the composition. The preference is not taken directly from their pockets, as it is taken from the pocket of the debtor. On the other hand, the creditors are innocent, and are ignorant of the inequality created. The debtor knows it, has consented to it, may have procured it. He may even have induced the favored creditor to enter into the agreement for a preference,

in order to get his assent to a proposed composition, which assent the creditor had a perfect right to withhold. It is for the benefit of the innocent creditors that the debtor should be able to resist the payment of the preference, and to recover back any payment that has been made. A composition is ordinarily assented to by creditors in order that their debtor may continue a business from which they hope to derive a profit. See Cockshott v. Bennett, 2 Term R. 763. This profit will be the greater, and they may deal with him the more safely, the larger are his assets. It is for their interest that these assets should not be lessened by the payment of the preference, and that they should be increased by the debtor's recovery back of a preference once paid. This is a better reason for requiring equality in a composition than is the supposed right of one creditor to have all other creditors suffer equally with himself. Knight v. Hunt, 5 Bing. 432; Ex parte Oliver, 4 De Gex & S. 354; Jackman v. Mitchell, 13 Ves. 581. It may reasonably be surmised that this interest of the innocent creditors in the debtor's estate, even more than a supposed oppression of the debtor, has led the courts to determine that a debtor, though guilty of the fraud, is not in pari delicto with the preferred creditor, and so may recover back the preference. It has been said, indeed, that there can be no recovery by the debtor where the payment was voluntary, but this statement has been greatly modified. See Atkinson v. Denby, 6 Hurl. & N. 778; Id., 7 Hurl. & N. 934; Crossley v. Moore, 40 N. J. Law, 27. At all events, the voluntariness of the payment should not prevent a recovery by the debtor's trustee in bankruptcy. He represents the creditors, and is not in delicto at all. As to them, the preference is none the less a fraud because voluntarily given by the debtor. See Bean v. Brookmire, 2 Dill. 108, Fed. Cas. No. 1,170; Middleton v. Lord Onslow, 1 P. Wms. 768; Eastabrook v. Scott, 3 Ves. 456; Alsager v. Spalding, 4 Bing. N. C. 407.

Thus far the decisions mainly agree. If, however, the only penalty for the preference given and received is a liability to repay it by the creditor preferred, manifestly there is little to deter that creditor from receiving, and nothing to prevent the debtor from giving, the preference. The former can but lose it. In no case will he be worse off than if he had been honest. The latter is provided with an opportunity to play fast and loose with the preferred creditor, as well as with creditors who are innocent. Many courts have declared, accordingly, that the secret preference avoids the composition. Musgat v. Wybro, 33 Wis. 515; Church v. Robbins, *81 Pa. 361; Cobb v. Tirrell, 137 Mass. 143; Manufacturing Co. v. Lockwood, 3 McCrary, 608, 11 Fed. 705; Kullman v. Greenebaum, 92 Cal. 403, 28 Pac. 674, 27 Am. St. Rep. 150; Kahn v. Gumberts, 9 Ind. 430; Bank v. Hoeber, 88 Mo. 37, 57 Am. Rep. 359; Id., 11 Mo. App. 475; Saul v. Buck, 72 Ga. 254; Child v. Danbridge, 2 Vern. 71; Ex parte Milner, 15 Q. B. Div. 605; Dauglish v. Tennent, L. R. 2 Q. B. 49. There are, indeed, some authorities to the contrary. See Bank v. Blake, 142 N. Y. 404, 37 N. E. 519, 27 L. R. A. 33, 40 Am. St. Rep. 607; Pollock, C. B., in Atkinson v. Denby, 6 Hurl. & N. 778; Bartlett v. Blaine, 83 Ill. 25, 25 Am. Rep. 346; Page v. Carter, 16 N. H. 254, 42 Am. Dec.

726; Railroad v. Eastman, 34 N. H. 124, 143. But the great weight of authority is in favor of the proposition just stated. The innocent creditors may sue the debtor for the unpaid balance of their original claims, without returning the dividend received under the composition, and the debtor cannot plead the composition as a release. What, then, is the effect of the composition upon the rights of the preferred creditor? So great has his guilt been deemed by some courts that they have held that he could not recover even the offered composition. Doughty v. Savage, 28 Conn. 146; Frost v. Gage, 3 Allen, 560; Howden v. Haigh, 11 Adol. & E. 1033; Ex parte Phillips, 36 Wkly. Rep. 567. See Baldwin v. Rosenman, 49 Conn. 105; Mallalieu v. Hodgson, 16 Q. B. 689; Higgins v. Pitt, 4 Exch. 312, 323; Ex parte Oliver, 4 De Gex. & S. 354. If the preferred creditor is thus deprived of his rights under the composition, courts must next decide if payments received by the preferred creditor under the composition can be recovered back from him as well as the preference. No court has gone to this length. See Low. Bankr. § 109. And yet if the preference can be recovered, even by the debtor himself, because the transaction is fraudulent, and if this fraud so pervades the whole transaction that the preferred creditor loses his rights under the composition, it is hard to see why the trustee in bankruptcy cannot recover back from the preferred creditor the payments received by the creditor under the composition as well as the preference. To make the rights of the preferred creditor under the composition depend altogether on the payment of the composition in money or in notes, permitting him to retain it in the first case, and not permitting him to collect it in the second, is not in accord with substantial justice. As between the creditor and the debtor, this result can be defended only upon the theory that they are both in pari delicto, and so are to be left where they lie. But it has been determined that they are not in pari delicto. As between the preferred creditor and the innocent creditors, no reason has been suggested for permitting a preferred creditor to retain a composition payment received, while denying him the right to collect it when due.

For the sake of the argument, however, let us consider the theory stated in some of the cases above cited, viz., that the preferred creditor, while retaining the composition payments already made, and having refunded the preference, cannot collect from the debtor or his assignee in bankruptcy the amount still due under the composition. It is possible to test the correctness of this theory by working it out to its final result. One of two things must happen: The original debt of the preferred creditor must (a) revive, or (b) it must not. If (a) it revives (See Howden v. Haigh, 11 Adol. & E. 1033, 1039; Chuck v. Mesritz, Fed. Cas. No. 2,710), the case will stand thus: All debts originally due by the debtor will be owing, as if no composition had been made; and all creditors, including the creditor originally preferred, will stand on an equality. The preferred creditor will thus be left none the worse off for his fraud, while the condition of the debtor who becomes liable on the original debt is left worse than it would have been if the preference and the composition were allowed to stand. This result is so unsatisfactory that it seems that the original

debt of the preferred creditor cannot be permitted to revive. Malla-lieu v. Hodgson; Ex parte Oliver; Ex parte Phillips; O'Brien v. Greenebaum, 92 Cal. 104, 28 Pac. 214. It is not necessary to discuss here cases like Elfelt v. Snow, Fed. Cas. No. 4,342, and Armstrong v. Bank, Fed. Cas. No. 545, in which a creditor, though preferred, was permitted to avoid a composition as against a debtor who had procured its execution by a fraud not connected with the preference. See, also, Walker v. Mayo, 143 Mass. 42, 8 N. E. 873, where the composition failed for a reason unconnected with the preference. If, however, (b) the original debt of the preferred creditor does not revive,—if he cannot recover the amount due him under the composition, and loses his original claim as well,—he gets too hard measure. That a debtor who, by giving him a preference, has induced a creditor to assent reluctantly to a composition, should be allowed to recover back from that creditor the preference, while depriving him of all rights arising under the composition, thus in many cases depriving him of his whole claim, cannot be tolerated. A fairly strong argument against the claim of the preferred creditor under the composition can be made upon technical grounds, indeed, but his claim has substantial justice on its side.

We find, then, that the theory which deprives the preferred creditor of his rights under the composition is unsatisfactory, for several reasons: (1) It implies a difference between retaining a payment and collecting an amount due, for which difference no good reason can be given. (2) If the original debt of the preferred creditor is revived, the debtor suffers unduly. (3) If the original debt does not revive, the preferred creditor suffers unduly. The cases which deny the preferred creditor's claim under the composition are inconclusive or unsatisfactory. In Baldwin v. Rosenman the preferred creditor had received payment under the composition, and the expression of opinion regarding the rights he would have if he had not been paid is but a dictum. In Doughty v. Savage the question concerned a recovery, not against the debtor, but against an indorser of the composition notes, who had no knowledge of the fraud. In Ex parte Oliver the creditor had received by way of preference an amount greater than that due under the composition, and seems to have been allowed to retain the former in lieu of the latter. See Knight v. Hunt, 5 Bing. 432; Bradshaw v. Bradshaw, 9 Mees. & W. 29. In Mallalieu v. Hodgson the suit was on the preference notes, and the remark concerning the forfeiture of the composition was obiter dictum. In Frost v. Gage, 3 Allen, 560, the suit was not against the debtor for the amount due under the composition, but against the assignee under the composition. The latter defended upon the extraordinary ground that the plaintiff, himself a creditor, had agreed to give him (the assignee) a secret preference; and the court sustained the defense by holding that the creditor could not recover under a composition agreement which had been obtained by his fraud. In the result, therefore, the preferred creditor, the defendant in the suit, was permitted to retain the sum due him under the composition, the preference (if he had been paid, which does not appear), and the dividend of another debtor, the plaintiff in the suit, whose only offense consisted in the payment of a preference out of his own

pocket to the defendant. This result was certainly not in accordance with justice, and does not furnish a strong argument for the theory asserted in the opinion, viz., that the preferred creditor should be deprived of his rights under the composition. The defendant offered to prove, indeed, that the plaintiff had agreed not to claim under the composition; but the decision was not rested upon this ground. In Howden v. Haigh the preference consisted in an outstanding bill, which might be so negotiated that the debtor would have to pay it. Moreover, it was the hardness of that case which led to the suggestion that the original debt might revive. In Ex parte Phillips the suit was on the original debt, and the remark concerning the forfeiture of the composition was obiter dictum. The creditor there had received money from the debtor, which he seems to have been allowed to retain. That course appears better, therefore, which leaves to the preferred creditor his rights under the composition, both to collect the sums still due thereunder from the debtor, and to retain the sums already received. White v. Kuntz, 107 N. Y. 518, 526, 14 N. E. 423, 1 Am. St. Rep. 886; Bank v. Blake, 142 N. Y. 404, 37 N. E. 519, 27 L. R. A. 33, 40 Am. St. Rep. 607; Fairbanks v. Bank (C. C.) 38 Fed. 630. As to him the composition is held valid, and so he suffers in comparison with the innocent creditors, because he is deprived of that claim against the debtor for the balance of the original debt which the avoidance of the composition has restored to the innocent creditors. O'Brien v. Greenebaum, 92 Cal. 104, 28 Pac. 214. As between the preferred creditor and the debtor, the former is allowed as much as, and not more than, he would have been entitled to had he honestly entered into the composition without seeking a preference. His right to refuse to enter into the composition, which he may have given up for the sake of the preference, is lost. If the composition has not been paid, then, after the fraudulent preference has been returned, the preferred creditor may be permitted to recover the composition due. Where both preference and composition are in money, the preferred creditor may, to avoid circuity of action, be permitted to recover so much of the composition as, added to the preference received, equals the total composition. See Knight v. Hunt, 5 Bing. 432; Bradshaw v. Bradshaw, 9 Mees. & W. 29. But if the composition offered is in notes, and the preference was received in cash, it seems that the whole preference must be returned. Bean v. Amsinck, Fed. Cas. No. 1,167. I hold, then, that the creditor here seeking to prove has received a fraudulent and voidable preference, which can be recovered back by the trustee in bankruptcy, but that the creditor's rights under the composition are not affected by the fraud. The sums received by the creditor in composition cannot be recovered back. As to it the composition is not avoided, and so it cannot prove its original claim against the bankrupt, as can the innocent creditors.

We have, therefore, a creditor who has received a fraudulent and voidable preference upon one debt, and who seeks to prove another. The preference must first be surrendered, even though it be not a statutory preference,—at any rate, if it be such a preference that it can be recovered by the trustee. In re Steers Lumber Co. (C. C. A.) 112 Fed. 406, which holds that a preference received on one debt need not be

surrendered in order to prove another, is contrary to the long-established practice in this district, to the opinion of the circuit court of appeals for this circuit in Dickson v. Wyman, 49 C. C. A. 574, 111 Fed. 726, and to the great weight of authority. See In re Ft. Wayne Electric Corp., 39 C. C. A. 582, 99 Fed. 400; In re Rogers Milling Co. (D. C.) 102 Fed. 687; In re Teslow (D. C.) 104 Fed. 229; In re Gillette (D. C.) 104 Fed. 771; In re Bashline (D. C.) 109 Fed. 965. Some of these cases illustrate the difficulty of distinguishing between independent and connected transactions. The preference here is not one defined by the statute, but is a preference by the ordinary principles of equity. An action for its recovery is not limited by the four-months period. Section 60b; Bean v. Brookmire, 1 Dill. 24, Fed. Cas. No. 1,168. What is the amount of the preference to be surrendered must next be considered.

Under the composition, the creditor should properly have received 50 per cent. of its claim,—$6,013.47. Through the payment of the promissory notes given to it by the bankrupt, it has received $4,307.83, which payment is to be treated as if it had been made in cash at the time the other creditors were paid. There remains $1,705.64 which the creditor was then entitled to receive under the composition offer. The creditor received the Stevens note, which apparently should be treated as a note for $3,513.65. So far as this note paid the balance due under the composition, the creditor was not preferred thereby. It was preferred only to the extent of the excess. The creditor contends that, inasmuch as it actually received on the Stevens note but $5.21 more than the amount due under the composition offer, the fraudulent preference given and received amounted only to $5.21. There is some force in this contention, but, upon the whole, I think that, in calculating the amount of the preference given, the Stevens note must be taken at its face value. The creditor did not seek to enforce collection of it at its maturity, but permitted it to run on for a considerable time. This it may have done for reasons other than impossibility of immediate collection. Considering the improper nature of the whole transaction on the creditor's part, and considering that it is not the bankrupt, but the defrauded creditors, whose rights are now in conflict with its claim, the company cannot complain if the Stevens note is treated by this court as it was treated in the memorandum made at the time of the composition, viz., as a cash payment on account of his original claim. It follows, therefore, that the creditor has been preferred to the amount of $1,808.

The court has next to determine what is the effect of this preference of $1,808. Shall it be (1) treated as a set-off to reduce the creditor's proof of claim (Ex parte Minton, 1 Mont. & A. 440); (2) treated as a set-off against the dividend to be received on the creditor's claim (see Low. Bankr. § 215); (3) surrendered before the creditor can prove an independent debt? The first course does not seem to me permissible. In recovering back the preference, the trustee in bankruptcy does more than recover a debt due the bankrupt. He proceeds in the right of the creditors as well as in that of the bankrupt. Bean v. Brookmire, 2 Dill. 108, Fed. Cas. No.

1,170. As between the second and third courses, the latter is more in accordance with the general policy of the present act, and is therefore adopted.

2. As to the merchandise debt: This cannot be proved so long as there is a fraudulent and voidable preference, held unsurrendered by the creditor. It was also stated in argument, and not disputed, that certain preferential payments had been received thereon by the creditor, in ignorance of the debtor's insolvency. The case of In re Jones (D. C.) 110 Fed. 736, is now treated in this court as overruled by the opinion rendered by the circuit court of appeals in Dickson v. Wyman, 49 C. C. A. 574, 111 Fed. 726, though the decision in the latter case is not absolutely inconsistent with In re Jones. That the bankrupt was insolvent four months before bankruptcy is practically conceded in the brief of counsel for the creditor, and is doubtless the fact. If a preferential payment, within the rule of Dickson v. Wyman, was made to the creditor within four months of bankruptcy, that, also, must be surrendered before proof.

The judgment of the referee allowing the claim is reversed.