VICTOR H. LEVY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SYDNEY CHAPLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20465, 20466.  Promulgated May 24, 1929.

*Theodore B. Benson, Esq.*, for the petitioners.
*C. H. Curl, Esq.*, and *I. W. Carpenter, Esq.*, for the respondent.

LITTLETON: The Commissioner determined that under section 280 of the Revenue Act of 1926 petitioners were liable for certain amounts as transferees of property of the Sassy Jane Manufacturing Co., a corporation. The liabilities which it is sought to enforce are on account of income and profits taxes of the Sassy Jane Manufacturing Co. as follows: 1918, $2,966.40 plus penalty of $3,151.57, and 1919, $1,656 plus penalty of $2,442.56.

The proceedings now come before the Board on a motion of the petitioners for judgment on the ground that they are not transferees under the provisions of the statute.

The facts as alleged in the petitions and admitted by the answers or as alleged in the answers and admitted by the petitioners for the purposes of this motion are as follows:

The petitioners are residents of Los Angeles, Calif., and were stockholders of the Sassy Jane Manufacturing Company. That corporation was organized in 1917, with an authorized capital of $100,000, of which only $10,000 was issued and paid for at the time of organization. On June 24, 1920, a stock dividend of $40,000 was declared and issued to the three stockholders, June Rand, Sydney Chaplin, and Victor H. Levy—June Rand receiving 50 per cent, Sydney Chaplin, 25 per cent, and Victor H. Levy, 25 per cent.

The Sassy Jane Manufacturing Co. filed income-tax returns for the years 1918 and 1919, which were signed by June Rand as president and Victor H. Levy, as secretary. Among the deductions claimed in such returns were items of $3,600 for a salary to Victor H. Levy for each year. The salary for 1918 was stated to have been for his services as secretary, to which, it was stated, he devoted one-half of his time. The salary for 1919 was stated to be for his services as secretary-buyer, and it was further stated that he devoted one-third of his time to his duties as secretary-buyer.

Victor H. Levy did not perform any services for the Sassy Jane Manufacturing Co. other than the little time necessary to attend to his duties as secretary, and the deduction of $3,600 in each of the returns was claimed for the sole purpose of evading the just tax due from such corporation.

That the salary deducted by the corporation was in order to evade tax was well known to all the stockholders of the corporation. June Rand and Sydney Chaplin passed the resolution authorizing the salary.

The Commissioner disallowed the salary deduction of $3,600 on each of the corporation's returns for 1918 and 1919 and made other adjustments, which resulted in the proposed deficiencies. The Commissioner also determined that the returns were false and fraudulent and, accordingly, determined penalties on account thereof. For the

purpose of this motion the petitioners admit that the corporation's returns were false and fraudulent, and that this was known to both of them.

The corporation became insolvent on or about January 1, 1923, and was adjudicated a bankrupt. The petitioners were each substantial creditors of the corporation for money advanced to the corporation, as evidenced by notes held by them in the amount of $39,436.32 by Chaplin and $38,764.07 by Levy.

In the final distribution of the assets of the bankrupt corporation, the stockholders received nothing on account of their stock, but the petitioners, or their assignees, as unsecured creditors, received a distribution in excess of the income-tax liability of the corporation as now determined by the respondent. At the time of the receipt of this distribution, the petitioners were each aware of the fact that the returns of the corporation for 1918 and 1919 were false and fraudulent, that there was an income-tax liability due the Government, and that such income-tax liability was a preferred claim of the Government against the assets of the bankrupt corporation.

The only issue presented for consideration is whether the petitioners are transferees under the provisions of section 280, Revenue Act of 1926, which reads in part as follows:

(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

\* \* \* \* \* \* \*

(f) As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

Petitioners contend that they are not transferees and, therefore, do not come within the provisions of the foregoing section.

The statute does not contain a definition of the word " transferee " and, in the opinion of the Board, the statement in section 280 (f) of the Revenue Act of 1926, that the term " transferee " includes " heirs, legatees, devisees and distributees " was not intended, as insisted by petitioners, to limit its meaning and application to the four classes mentioned, but was merely to make clear that all four were included. The word " transferee " is defined by Webster's New International Dictionary as " the person to whom a transfer is made." Bouvier's Law Dictionary defines it as " He to whom a transfer is made."

In the brief of counsel for petitioners it is contended:

He who makes a loan and collects a part of what is due him is in no sense a transferee of the property of his debtors nor is he a legatee or distributee. Had Congress intended a transferee to include a payee it could easily have done so and further it would have omitted the words heir, legatee, devisee and distributee.

The facts leading up to these proceedings can be expressed in words of Congress itself. The Sassy Jane Manufacturing Company was declared a bankrupt and bankruptcy proceedings followed and the amounts received by the petitioners were as the result thereof.

Section 67 of the Bankruptcy Act provides that a referee shall "declare dividends and prepare and deliver to trustees the dividend sheets showing the dividends declared and to whom payable." Section 75 of the Act provides that trustees shall collect and reduce to money the property of the bankrupt and deposit all money received in designated depositories and shall "pay dividends within ten days after they are declared by the referees." What actually transpired, therefore, when expressed in terms used by Congress itself, is that the claims of the petitioners were allowed and their dividends declared by the referee and paid by the trustee. The petitioners, therefore, received the payment of dividends from the trustee. Congress having elected in the Bankruptcy Act to refer to what transpired in these cases as the payment of dividends certainly can not in the Revenue Act be considered to have referred to the same transaction as a transfer of property.

Such contention is not in accord with court decisions. In *In re Conhaim*, 97 Fed. 923 (Dist. Ct., Dist. of Washington, N. D. 1899), it was held that payment of a debt in money is a transfer of property, within the purview of the Bankruptcy Act, section 60 (a), providing that a debtor shall be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property, and the effect of the enforcement of such transfer will be to enable one of his creditors to obtain a greater percentage of his debt than other creditors of the same class.

To the same effect, see *In re Sloan*, 102 Fed. 116; 117 (Dist. Ct., S. Dist. Iowa); also *In re Ft. Wayne Electric Corporation*, 39 C. C. A., 7th Cir., 582; 99 Fed. 400.

In *Pirie* v. *Chicago Title & Trust Co.*, 182 U. S. 438, a bankruptcy case, Mr. Justice McKenna, in delivering the opinion of the court, after quoting subdivision (a) of section 60 of the Bankruptcy Act of 1898, stated:

It will be observed that payments in money are not expressly mentioned. Transfers of property are, and one of the contentions of appellants is that by "transfers of property," payments in money are not intended. The contention is easily disposed of. It is answered by the definitions contained in section 1. It is there provided that "'transfer' shall include the sale and every other and different mode of disposing of or parting with property or the possession of property, absolute or conditional, as a payment, pledge, mortgage, gift or security." It seems necessarily to mean that a transfer of property includes the giving or conveying anything of value—anything which has debt paying or debt securing power.

We are not unaware that a distinction between money and other property is sometimes made, but it would be anomalous in the extreme that in a statute

which is concerned with the obligations of debtors and the prevention of preferences to creditors, the readiest and most potent instrumentality to give a preference should have been omitted. Money is certainly property, whether we regard any of its forms or any of its theories. It may be composed of a precious metal, .and hence valuable of itself, gaining little or no addition of value from the attributes which give it its ready exchangeability and currency. And its other forms are immediately convertible into the same precious metal and even without such conversion have, at times, even greater commercial efficacy than it. It would be very strange indeed if such forms of property, with all their sanctions and powers, should be excluded from the statute, and the representatives of private debts, which we denominate by the general term "securities" should be included. We certainly cannot so declare upon one meaning of the word "transfer." If the word itself permitted such declaration, which we do not admit, the definition in the statute forbids it. "Transfer" is defined to be not only the sale of property, but "every other mode of disposing or parting with property." All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished—a preference enabling a creditor "to obtain a greater percentage of his debt than any other creditors of the same class."

In bankruptcy proceedings, the amount due the Government for taxes is made by law a preferred liability and should be given priority over general creditors. Sec. 64, Bankruptcy Act of 1898 (30 Stat., ch. 541, pp. 544–563); *Oliver* v. *United States*, 268 U. S. 1. When the petitioners received their distributions, they did so with full knowledge that a fraudulent return had been filed by the corporation from whose assets their debts were being paid and that with a disclosure of this fact the amounts which they were receiving would have been reduced on account of this preferred liability of the Government. The further fact exists that one of the petitioners, Levy, was secretary of the corporation in question and signed its return in that capacity. It also appears that the other petitioner, Chaplin, was one of the directors of the corporation and voted for the salary to Levy, which was deducted in the return, although he knew at the time that Levy had not performed services for which the salary was voted. Under such circumstances, the corporation return as filed was not merely fraudulent in so far as the corporation, as a separate entity, was concerned, but also the fraudulent acts in question were actively participated in by the petitioners before us, who seek to retain the advantage gained thereby.

Under such circumstances we are of the opinion that the petitioners are clearly transferees of property within the meaning of section 280 of the Revenue Act of 1926.

The motion of the petitioners for judgment is, accordingly, denied upon the facts disclosed by the pleadings. The proceedings will be restored to the calendar for trial in due course on their merits.

Reviewed by the Board.